UNITED STATES COURT OF APPEALS

**Filed 12/23/96**

FOR THE TENTH CIRCUIT

---

DANA DILBECK,

        Plaintiff-Appellant,

v.

FARMERS INSURANCE COMPANY, INC.,

        Defendant-Appellee.

No. 95-7167
(D.C. No. CV-95-55-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before PORFILIO, ALARCON,[**] and LUCERO, Circuit Judges.

---

Plaintiff Dana Dilbeck brought this diversity action against defendant

Farmers Insurance Company, seeking to recover underinsured motorist (UM)

benefits, damages incurred as a result of defendant's alleged bad faith refusal to

pay her UM claim, and punitive damages. She now appeals from the district

court's denial of her motion for a new trial following entry of judgment in favor

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

of defendant on both her breach of contract claim and her bad faith claim. We affirm.[1]

I

On August 17, 1991, plaintiff was injured in an accident involving an automobile driven by Sabrina Swenson, in which plaintiff was a passenger, and an automobile driven by Ann Marie Steinbesser. As a result of the accident, plaintiff suffered a closed head injury, was hospitalized for two weeks (including six days in an intensive care unit), and underwent cognitive rehabilitation for approximately eight months. The investigating officer determined that the accident was caused by Steinbesser's failure to stop at a red light. He also cited Swenson for driving under the influence of alcohol.

At the time of the accident, there was liability coverage on the Steinbesser vehicle through another insurer in the amount of $100,000; liability coverage on the Swenson vehicle through defendant in the amount of $100,000; UM coverage through defendant on the Swenson vehicle in the amount of $10,000; and UM coverage through defendant on plaintiff's vehicle in the amount of $50,000.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

In March of 1992, while she was still undergoing cognitive rehabilitation, plaintiff demanded payment of the UM benefits under the Swenson policy. See I Appellant's App. at 115-17. Defendant did not pay the claim. In March of 1993, plaintiff again demanded payment of Swenson's UM benefits. See id. at 118. She also demanded from defendant the limits of Swenson's liability coverage and the UM benefits under her own motor vehicle policy. See id. Defendant again paid nothing.

During the same period, plaintiff was attempting to secure the limits of Steinbesser's liability policy. In July of 1992, she received a $5,000 "advance" from Steinbesser's carrier "to facilitate [ongoing] medical treatment" of injuries received in the accident. Id. at 103. In March of 1993, Steinbesser's carrier offered plaintiff Steinbesser's policy limits of $100,000 to settle the claims against Steinbesser.

Plaintiff brought an action against defendant first in the Oklahoma state courts. She subsequently dismissed her state court action without prejudice and filed this diversity action, seeking to recover UM benefits in the amount of $60,000 and damages for defendant's bad faith refusal to pay her claim for UM benefits. In this action, plaintiff alleged that the damages she incurred as a result of the accident exceeded the amount of available liability coverage and thus that defendant was obligated under the terms of the applicable policies to pay her UM

benefits. Plaintiff also alleged that defendant failed to deal with her fairly and in good faith on her claim for UM benefits. Defendant denied that it breached the terms of the applicable insurance contracts, claiming that the damages plaintiff suffered did not exceed the available liability coverage and that plaintiff was thus not entitled to receive UM benefits. Defendant also denied that it acted in bad faith.

Following trial, the jury returned a "Special Findings Verdict Form," which answered the following questions as indicated:

> 1. Do you find by the greater weight of the evidence that Sabrina Swenson was negligent in the operation of her motor vehicle? NO.
>
> 2. Do you find by the greater weight of the evidence that Ann Marie Steinbesser was negligent in the operation of her motor vehicle? YES.
>
> 3. The amount of plaintiff's damages directly caused by the negligence of Sabrina Swenson and/or Ann Marie Steinbesser, as the case may be, is $100,000.

I Appellant's App. at 67. The jury also returned a verdict for plaintiff on her bad faith claim and assessed damages in the total amount of $100,000 ($60,000 for financial losses, $20,000 for mental pain and suffering, and punitive damages in the amount of $20,000). See id. at 68.

Despite the verdicts, the court entered judgment for defendant on both of plaintiff's claims. The court explained its judgment on plaintiff's breach of contract claim by noting that "the jury's special findings mandate a determination

-4-

that plaintiff's total damages were not in excess of the applicable liability limits."

Id. at 69. On the bad faith claim, the court concluded "[t]he determination that

defendant did not breach the parties' contract, i.e. that defendant was not required

under the insurance policies to pay **any amount**, precludes plaintiff from

recovering on her claim for breach of the implied covenant of good faith and fair

dealing." Id. Plaintiff filed a motion for a new trial on the issue of damages, see

id. at 71, 83, which was denied by minute order, see id. at 96.

On appeal, plaintiff argues, as she did in her post-trial motion, that she is

entitled to a new trial because (1) evidence of alcohol consumption by plaintiff

and Swenson was improperly admitted, (2) the jury's special finding as to

plaintiff's personal injury damages was against the clear weight of the evidence,

and (3) the jury's verdict on her bad faith claim is inconsistent with its verdict on

her breach of contract claim. Plaintiff also contends that she is entitled to recover

on her bad faith claim notwithstanding the jury's finding precluding her recovery

of benefits under the policy.

We review the district court's denial of defendant's motion for a new trial

for abuse of discretion. See Patton v. TIC United Corp., 77 F.3d 1235, 1240

(10th Cir.), cert. denied, 116 S. Ct. 2525 (1996). We will reverse only if the

district court "'made a clear error of judgment or exceeded the bounds of

permissible choice in the circumstances.'" Sheets v. Salt Lake County, 45 F.3d

-5-

1383, 1390-91 (10th Cir.), cert. denied, 116 S. Ct. 74 (1995) (quoting Hinds v.

General Motors Corp., 988 F.2d 1039, 1046 (10th Cir. 1993)).

II

Plaintiff first argues that the district court erred in allowing the admission

of evidence concerning alcohol consumption by plaintiff and Swenson.

Defendant contends that this issue has not been preserved for appellate review as

a result of plaintiff's failure to lodge contemporaneous objections to the

introduction of the allegedly objectionable evidence. Plaintiff did, prior to trial,

see I Appellant's App. at 41, and again on the morning of trial, see id. at 66, make

motions in limine to exclude the evidence. Those motions were denied. See id. at

64, 66.[2]

We have previously held that a motion in limine preserves an objection for

appellate review "when the issue (1) is fairly presented to the district court, (2) is

the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled

[2]      The scope of plaintiff's motion in limine was a little unclear. In the
introduction, in relevant part, plaintiff states that she is seeking the exclusion of
evidence "that [plaintiff] was reported to have had an odor of alcohol after the
accident." I Appellant's App. at 32. In the body of her motion, she expands her
request to include "evidence regarding the use of alcohol by [plaintiff or
Swenson]." Id. at 41. The district court, in its minute order, denies plaintiff's
motion with reference to "evidence that plaintiff had an odor of alcohol after the
accident." Id. at 64. For purposes of our review, we have given plaintiff the
benefit of the doubt and construed her motion as covering evidence concerning
alcohol consumption by plaintiff and Swenson.

upon without equivocation by the trial judge." United States v. Mejia-Alarcon, 995 F.2d 982, 986 (10th Cir. 1993). In discussing the second criteria, we noted that "some evidentiary issues are akin to questions of law, and the decision to admit such evidence is not dependent upon the character of the other evidence admitted at trial," id. at 987, while "some admission decisions are very fact-bound determinations dependent upon the character of the evidence introduced at trial." Id. We urged caution in Mejia-Alarcon about relying exclusively upon rulings on motions in limine, noting that "most objections will prove to be dependent on trial context and will be determined to be waived if not renewed at trial." Id. at 988.

In this case, we hold that the issue presented by plaintiff's motion in limine is not of a type that can be finally decided prior to trial. Plaintiff took the position in her motion that evidence of alcohol consumption by plaintiff and Swenson was irrelevant, and also prejudicial under Fed. R. Evid. 403. See I Appellant's App. at 41. Defendant argued that the information regarding alcohol consumption was utilized by it in its evaluation of plaintiff's claim, see id. at 61, which, if borne out by the evidence at trial, would indeed make it relevant. Because any final determination as to admissibility under Rule 403 rests on a balancing of probative value and potential prejudicial effect, it is a determination that can only properly be made in light of the other evidence that comes in at trial.

See Mejia-Alarcon, 995 F.2d at 987 & n.2; Green Constr. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1013 (10th Cir. 1993).

Having satisfied ourselves that plaintiff's motions in limine did not preserve her objections for appellate review, and absent contemporaneous objections, we review plaintiff's allegation of error regarding the admission of evidence of alcohol consumption for plain error. McEwen v. City of Norman, 926 F.2d 1539, 1545 (10th Cir. 1991). "The plain error exception in civil cases has been limited to errors which seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (further quotation omitted). Plaintiff has the burden of proving plain error and that it "almost certainly affected the outcome of the case." Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 961 (10th Cir. 1993).

In this case, plaintiff has failed to satisfy that burden. The evidence of Swenson's alcohol consumption was clearly relevant to the issues of Swenson's negligence and the reasonableness of defendant's evaluation concerning potentially applicable liability coverage for plaintiff's injuries. Even were it not relevant, plaintiff can hardly argue that it affected the outcome of the case when the jury found Swenson not negligent notwithstanding the challenged evidence. The relevance of plaintiff's alcohol consumption is more tenuous, but we note that the only times plaintiff objected to evidence of her own alcohol consumption,

her objections were sustained.  See III Appellant's App. at 319, 321.

Furthermore, plaintiff's bare statement that "[t]he unfair prejudicial effect of [this

evidence] . . . is reflected by the verdict on her damages for her personal

injuries," Appellant's Br. at 26, simply does not satisfy plaintiff's burden.  We

hold therefore that the district court did not plainly err, if it erred at all, by failing

to exclude the evidence of alcohol consumption.

III

Plaintiff's second contention is that the jury's personal injury damage

award was against the weight of the evidence.  A motion for new trial on the

ground that the verdict is against the weight of the evidence presents a question of

fact, see Patton, 77 F.3d at 1242, and is committed to the discretion of the district

court, see Brown v. McGraw-Edison Co., 736 F.2d 609, 616 (10th Cir. 1984).  We

will not reverse the district court's decision "absent a showing of a manifest

abuse of discretion."  Continental Cas. Co. v. Southwestern Bell Tel. Co., 860

F.2d 970, 972 (10th Cir. 1988).  Viewing the record in the light most favorable to

the party seeking to sustain the verdict, we focus our inquiry on whether the

verdict is "clearly, decidedly, or overwhelmingly against the weight of the

evidence."  Patton, 77 F.3d at 1242 (quotation omitted).

Our review of the record here does not persuade us that the jury's award of

$100,000 to compensate plaintiff for her injuries was clearly, decidedly, or

overwhelmingly against the weight of the evidence. While plaintiff is correct that the jury heard testimony that defendant valued plaintiff's claim at $150,000 and that such a valuation was reasonable, the jury was not automatically obliged to accept defendant's valuation, even if it was reasonable. Cf. Black v. Hieb's Enters., Inc., 805 F.2d 360, 363 (10th Cir. 1986) (rejecting plaintiff's argument that "the evidence was more than sufficient to support another verdict," even though the assertion "might well [have been] true[.]"). "It [is] the jury's function, as the trier of fact, to determine the amount of damages that would fairly compensate [plaintiff], and the jury has wide discretion in making that determination." Id. at 362-63 (citing Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985). "The trier of the facts, who has the first-handed opportunity to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party." Bennett, 774 F.2d at 1028. Moreover, we note that "the amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it." Id.

In this case, the evidence is undisputed that as a result of the accident, plaintiff suffered a closed head injury, was hospitalized for two weeks, underwent cognitive rehabilitation for approximately eight months, and ultimately incurred medical expenses in the amount of $47,601.48. There was, however, conflicting

medical evidence as to whether plaintiff suffered any permanent mental impairment as a result of the accident. Compare II Appellant's App. at 166-68 (Dr. Johnsen's opinion that plaintiff has mild but permanent cognitive deficits); with IV Appellant's App. at 633-34 (Dr. Montero's opinion that plaintiff has no continuing problems with cognitive ability or brain function). There was also testimony which suggested that plaintiff's injuries were serious in part because of potential life-threatening complications, which did not ultimately develop. See II Appellant's App. at 59, 69, 166.

Although plaintiff testified at trial that she had not worked to any substantial degree since the accident, see III Appellant's App. at 305, there was no medical evidence that she was unable to work after December of 1991, cf. II Appellant's App. at 60, 62, and medical evidence that she was capable of working by at least September of 1992, see id. at 178. There was also evidence that plaintiff had attended school since the accident, see III Appellant's App. at 315-16 (plaintiff successfully completed training as emergency medical technician and received her license in October of 1992), and that she had done quite well, see II Appellant's App. at 106. While it is difficult to place a dollar amount on personal injuries like those sustained here, we cannot say on this record that the district court abused its discretion in denying plaintiff's motion for a new trial on the grounds that her damage award was against the weight of the evidence.

IV

Plaintiff's third contention on appeal is that there is an irreconcilable inconsistency between what she characterizes as "the jury verdict on [her] breach of contract claim" and the verdict on her bad faith claim. Appellant's Br. at 29. More specifically but without elaboration, plaintiff argues that the jury's finding that plaintiff's personal injury damages amounted to only $100,000 ($50,000 less than defendant's evaluation) is inconsistent with its finding (required under the instructions) that defendant's refusal to pay plaintiff's underinsured motorist claim in full was unreasonable. Defendant urges us to find that plaintiff has waived any such objection, noting correctly that plaintiff neither objected to the jury instructions nor the verdict forms which allowed the alleged inconsistency, see IV Appellant's App. at 692, nor did she object on the ground of inconsistency or seek any clarification of the verdicts before the jury was dismissed, id. at 754, despite a specific inquiry from the court as to "any record to be made," id.

Whether or not plaintiff has preserved her objection,[3] our review of the record leads us to conclude that the district court did not abuse its discretion in denying plaintiff's motion for a new trial on the ground of inconsistent verdicts. First, we note that contrary to plaintiff's characterization, the jury did not return a verdict for defendant on plaintiff's breach of contract claim. Rather, the jury simply determined who was negligent and the amount of plaintiff's damages as a result of that negligence. It was the court, armed with the jury's findings, that determined that plaintiff's damages did not exceed the available liability coverage, that the UM coverage thus was not implicated, and that defendant therefore was entitled to judgment on plaintiff's breach of contract claim. The jury was not instructed as to how the court would make its determination on plaintiff's breach of contract claim. Indeed, they were instructed, without objection, only that "in order to recover the underinsured motorist benefits, plaintiff must first prove . . . that either [Swenson or Steinbesser, or both] were

<hr>

[3]     Defendant characterizes the verdict forms in this case as general verdict forms accompanied by special interrogatories under Fed. R. Civ. P. 49(b), see Appellee's Br. at 18, to which a failure to object on the ground of inconsistency before the jury was discharged would constitute waiver, see Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1545 (10th Cir. 1993). Plaintiff, on the other hand, characterizes the verdicts as special verdicts governed by Fed. R. Civ. P. 49(a), see Appellant's Reply Br. at 8, to which no pre-discharge objection on the ground of inconsistency would be required to preserve the issue, see Resolution Trust Corp., 998 F.2d at 1545. Because of our determination that the verdicts are not inconsistent, we need not decide how these verdicts would be most appropriately characterized.

-13-

negligent in causing the accident." IV Appellant's App. at 735. The jury did find Steinbesser negligent, and the evidence established that defendant had paid nothing on plaintiff's UM claim. Under these circumstances, we cannot find an abuse of discretion in the district court's denial of plaintiff's new trial motion on the ground of inconsistent verdicts.

V

Plaintiff's final contention on appeal arises from the district court's entry of judgment in favor of defendant on her bad faith claim. Plaintiff maintains that, contrary to the district court's conclusion, she is entitled to recover on her bad faith claim, notwithstanding the jury's special finding concerning her personal injury damages which mandated judgment for defendant on her breach of contract claim. We review the district court's interpretation of Oklahoma law de novo. See Patton, 77 F.3d at 1240 (citing Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)).

The Oklahoma Supreme Court first recognized the tort of bad faith in Christian v. American Home Assurance Co., 577 P.2d 899 (Okla. 1977), holding that "an insurer has an implied duty to deal fairly and in good faith with its insured and that the violation of this duty gives rise to an action in tort." Id. at 904. In that seminal case, the court elaborated:

> We do not hold that an insurer who resists and litigates a claim made
> by its insured does so at its peril that if it loses the suit or suffers a

-14-

judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith and thus be liable in tort.

We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

Id. at 905.

This court, in applying Oklahoma law, has interpreted Christian as recognizing an action in bad faith for refusal to pay only where the insured is entitled to payment under the policy. In McCarty v. First of Georgia Ins. Co., 713 F.2d 609 (10th Cir. 1983), we vacated a summary judgment that had been entered in favor of the insurer on a bad faith claim where the district court had previously and correctly concluded that the insured's contract claim was barred by the applicable statute of limitations. This court determined that, under Christian, "[t]he breach of fair dealing claim is cognizable [notwithstanding the dismissal of the contract claim on statute of limitations grounds] if appellants can prove that they were entitled to payment on the underlying insurance claim." Id. at 612 (citing Christian for the proposition that only if the insured were entitled to payment could a cause of action for wrongful denial of the claim arise).

-15-

We reached a similar conclusion in <u>Norman's Heritage Real Estate Co. v. Aetna Cas. & Sur. Co.</u>, 727 F.2d 911 (10th Cir. 1984), where we interpreted <u>Christian</u> as holding that "an insurer is liable in tort for a willful, malicious, bad faith refusal to pay only a valid claim." <u>Id.</u> at 916. In that case, we affirmed the trial court's decision to strike a punitive damage award in part because there was insufficient evidence of the insurer's bad faith, noting as "significant" evidence that certain of the insured's claims were invalid or overstated. <u>See</u> <u>Norman's Heritage Real Estate Co.</u>, 727 F.2d at 914, 916.

We also find support for the district court's action in a relatively recent decision by the Oklahoma Court of Appeals. <u>See</u> <u>Phillips v. Oklahoma Farmers Union Mut. Ins. Co.</u>, 867 P.2d 1361 (Okla. Ct. App. 1993). In <u>Phillips</u>, the insureds suffered injury in a car accident and thereafter brought a civil action against both the tortfeasor and their own uninsured/underinsured carrier. In the course of pretrial proceedings, the insureds unsuccessfully sought leave to amend their complaint to add a bad faith claim against the insurer. A verdict was returned resulting in a net award to the insureds of an amount less than the tortfeasor's liability insurance limits. The insureds appealed, challenging, among other things, the trial court's denial of their motion to amend. The court of appeals found no error, relying primarily on the trial court's broad discretion to enforce its pretrial orders, under which the insured's motion to amend was

-16-

untimely.  As additional support for its finding that the trial court did not abuse

its discretion, however, the appellate court noted that if

> as the parties suggest[ed], the [insureds] grounded their bad faith
> claim on allegations of [the insurer's] unreasonable failure to affect
> settlement of the [insured's] claim in excess of the tortfeasor's
> liability limits and thus within the UM provisions of the [insured's
> UM policy], the jury verdict for [the insureds] in a sum far less than
> the tortfeasor's minimum liability insurance limits militates against a
> viable bad faith claim.

Id. at 1363-64 (citing Christian, 577 P.2d 899, for the following proposition: "bad

faith liability imposed only upon clear showing of unreasonable, bad faith

withholding of otherwise valid claim").

Plaintiff cites language in Buzzard v. McDanel, 736 P.2d 157 (Okla. 1987)

("Buzzard I"), to support her position that there can be a valid bad faith claim

even in the absence of coverage under the underlying policy.  There, the

Oklahoma Supreme Court issued a writ of prohibition to prevent a trial court from

requiring a trial on the issue of whether the insureds were legally entitled to

recover from the allegedly underinsured tortfeasor (with whom the insureds had

already settled), before submitting to the jury the question of the UM insurer's

bad faith refusal to honor the insureds' UM claim.  In so doing, the court noted

that "it is not the question of whether [the insureds] would be legally entitled to

recover [from the allegedly underinsured tortfeasor] which is the controlling issue

in this action on bad faith refusal, but whether [the UM insurer], at the time [the

-17-

insureds] made their claim, was in possession of information to establish that its refusal to pay was in good faith." Id. at 159 n.3.

Contrary to plaintiff's suggestion, Buzzard I does not address the relative importance in a bad faith action of the issue of whether an insured is legally entitled to recover UM benefits from the UM carrier. It does establish, however, that in Oklahoma, "[t]he decisive question [in a bad faith action] is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla. 1991) (citing Buzzard I). Although this language suggests that in appropriate circumstances Oklahoma would recognize a valid bad faith claim even in the absence of coverage, we need not decide that question here. The jury in this case was instructed, without objection, that plaintiff's bad faith claim was based on defendant's "refus[al] to pay plaintiff the proper amount for a valid claim under the insurance policy." IV Appellant's App. at 737. The instructions also provided that in order for plaintiff to recover damages on her bad faith claim, she had to show that defendant "was required under the insurance policy to pay plaintiff's claim" and that its "refusal to pay the claim in full was unreasonable." Id. Although to prove defendant unreasonably refused to pay, plaintiff introduced evidence that defendant did not promptly and properly investigate and evaluate her claim, the case was clearly presented to the

jury, without objection, on the theory of a bad faith refusal to pay a valid claim. Under these circumstances, we find no error in the district court's entry of judgment in favor of defendant on plaintiff's bad faith claim.

AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge