**Hugh L. BENNETT, Plaintiff-Appellant,**

v.

**Bobby Joe LONGACRE,
Defendant-Appellee.**

No. 83–1941.

United States Court of Appeals,
Tenth Circuit.

Oct. 7, 1985.

Howard K. Berry, Jr., Berry & Berry, P.C., Oklahoma City, Okl., for plaintiff-appellant.

Micky Walsh, Manners & Abney, Oklahoma City, Okl., for defendant-appellee.

Before McKAY, MOORE, Circuit Judges, BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a), Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

In this diversity action, plaintiff-appellant, Hugh L. Bennett, has appealed from a judgment entered upon a special jury verdict which awarded him compensatory damages of $4,319.25 and $5,000 punitive damages for personal injuries resulting from a rear-impact collision involving his car and a truck driven by defendant-appellee, Bobby Joe Longacre. Bennett alleged, and the jury found, that the collision was proximately caused by the negligence of Longacre in driving the truck.[1] Neither party has challenged this determination by the jury in this appeal. Bennett, however, moved for a new trial, arguing that the district court erred in granting Longacre's motion in limine which prevented him from introducing extrinsic evidence concerning Longacre's possession of marijuana, use of illegal drugs on previous occasions, and refusal to take a sobriety test after the accident, for the purpose of impeaching his credibility. Bennett also argued to the district court that such a low verdict in the face of the evidence on injuries must have been a product of passion and prejudice on the part of the jury. The district court denied the motion for a new trial. Bennett appeals, making essentially the same arguments as he had argued to the district court in support of his motion for a new trial. For the reasons discussed below, we affirm.

Bennett was the only live witness who testified at the trial. All other witnesses, including Longacre, testified by deposition. On appeal, we review the evidence in the light most favorable to the party seeking to sustain the judgment. On February 11, 1981, at about 10:30 P.M., Bennett was proceeding west in his car on an exit ramp at Western Avenue off the U.S. Interstate 240 in Oklahoma City, Oklahoma. There, he observed an accident ahead of him, which had occurred earlier. He stopped his car to wait for the traffic in front of him to clear. Longacre was proceeding in the same direction some distance behind Bennett. He first noticed Bennett's car approximately 50 feet from it when he saw Bennett's car move for a short distance and stop directly in the path which Longacre's truck was traveling. Longacre applied the brakes, laying 40-foot skid-marks on the pavement before colliding with the rear of Bennett's car. The force upon impact propelled Bennett's car forward for approximately 17 feet, but it left no skidmarks. There was no evidence which indicates that Longacre was traveling above the speed limit either before he locked the truck's brakes or at the point of impact.

---

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, is sitting by designation.

1. By answering to a special interrogatory, the jury determined that 99% of the negligence was attributable to Longacre.

Immediately after the collision, both men left their vehicles and headed towards each other. A scuffle ensued, each party exchanged punches. The investigative officer, Jerry Wilson of the Oklahoma City Police Department, arrived at the scene of the accident shortly thereafter. Officer Wilson observed that Longacre's speech was slurred, and his breath had the smell of alcohol. He was of the opinion that Longacre was under the influence of alcohol at the time of collision.

Bennett claims that he has suffered a whiplash injury, resulting in a continuing pain in the neck and shoulders and a feeling of numbness in his arms and hands. He visited several physicians about his complaints. X-ray negatives, taken a day after the accident at the Midwest City Memorial Hospital in Oklahoma, indicated certain spinal irregularities consisting of distortion and displacement of the sixth and seventh cervical vertebrae in Bennett's neck, and a narrowing of the neuroforamen cavity which impinge upon the nerve fibers of the shoulders and arms. Bennett's medical expert witness testified that such spinal irregularities could have been caused by the accident. On cross-examination, he admitted that the spinal irregularities could have been attributed to a degenerative arthritic condition, and which could have had existed prior to the time of the accident. Another of Bennett's treating physicians testified that the type of injuries exhibited in the fifth, sixth, and seventh cervical vertebrae of the neck area could have been caused by a traumatic shock of compression and extension of the spine usually resulting from a whiplash condition. But he also expressed an opinion that the type of spinal irregularities shown on Bennett's myelogram was commonly caused by the wear and tear on the spine from doing exertive, heavy manual labor over a long period of years. Longacre's medical expert witness stated that, based on his medical examination of Bennett, there was a pre-existing arthritic condition both in the fifth, sixth, and seventh cervical vertebrae and the lower areas of the spine. He was of the opinion that the injuries Bennett would have suffered under the circumstances of this accident were not permanent and would not require any further medical treatments. The record shows that Bennett had suffered a fracture injury in the sacral and pelvic areas from falling off a horse, and he had participated in strenuous manual labor in servicing oil well equipment before the accident.

Longacre, by his own admission, had consumed two bottles of beer in the two-hour period prior to the time of the collision. It was revealed in the deposition of Officer Wilson that he discovered in the course of investigating this accident a quantity of marijuana in Longacre's truck. Longacre denied that he had used any marijuana on that evening; and Officer Wilson did not find any evidence which would controvert Longacre's denial. Longacre, however, refused to submit to a chemical test for sobriety. It was also disclosed in the deposition of Longacre's ex-wife, Beverly Baum, that she had seen Longacre smoke marijuana and used illegal drugs on previous occasions.

Bennett contends that the district court erred in granting Longacre's motion in limine which prevented Bennett on direct examination from introducing extrinsic evidence on specific instances of misconduct by Longacre to attack his credibility. Conflicting testimony shows that each party claimed that they saw a young woman come out of the opponent's vehicle and disappear under the cover of darkness immediately following the collision. Longacre further claimed that the young woman was the driver of Bennett's car. Bennett's contention is that the questions regarding Longacre's possession and prior usage of alcohol and illicit drugs and his failure to submit to a sobriety test were permissible under F.R.Evid. 608(b) as an attempt to impeach his credibility for truthfulness and reliability. The record shows that Bennett has conceded that Longacre was neither prosecuted for nor convicted of any felony

charges in connection with these specific instances of misconduct.[2]

■ F.R.Evid. 608(b) provides that a witness may not be impeached by inquiring into specific acts of misconduct not resulting in a conviction. It, however, grants the trial court discretion to permit a witness to be cross-examined on specific instances of conduct probative of a witness' character for truthfulness or untruthfulness. *Id.,; see also* F.R.Evid. 611(b). The probative value of the proffered evidence is judged by its relevancy to the issues of the case. F.R.Evid. 401. The determination of whether the evidence is relevant is within the sound discretion of the trial court. *Young v. Anderson,* 513 F.2d 969, 973 (10th Cir.1975). Even if it is determined to be relevant, the trial court must balance the probative value of the evidence against its potential prejudicial effect, and may exclude otherwise admissible evidence if its probative value is substantially outweighed by the danger of unfair prejudice. F.R. Evid. 403. On appeal, we do not disturb the trial court's ruling on evidentiary matters absent an abuse of discretion. *United States v. Lowe,* 569 F.2d 1113, 1116 (10th Cir.1978), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1979).

In denying Bennett's motion for a new trial, the district court adhered to its previous ruling in Longacre's motion in limine and held that the specific instances of drug use by Longacre were irrelevant to the issues of the trial. It specifically found that "there was no evidence whatsoever

that Defendant (Longacre) was 'under the influence' of marijuana at the time of the accident." The court further ruled that even if the evidence on specific acts of misconduct by Longacre was determined to be relevant, the introduction of this testimony on Longacre's prior usage of alcohol and illegal drugs was highly prejudicial and would be excludable under F.R.Evid. 403. The district court also decided that the evidence on Longacre's refusal to take a sobriety test was inadmissible in a civil action under the Oklahoma law in effect at the time of the accident.[3]

■ It is our view that the exclusion of the extrinsic evidence on specific acts of misconduct by Longacre adduced in his deposition on direct examination by Bennett's counsel was proper. It is clear from the statement of F.R.Evid. 608(b)[4] that a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony. Bennett was attempting to bring out on direct examination of his own witness, Longacre, specific instances of his past misconduct by extraneous evidence, which is prohibited by the Rule. Furthermore, we agree with the district court's findings and conclusion that the evidence on Longacre's previous actions in indulging in alcohol and illegal drugs, without more, would not have any probative value on his "character for ... untruthfulness" under the circumstances of this case. We need not decide whether the district court erred in excluding the

---

**2.** The colloquy between the district judge and the counsel indicates that Longacre pled guilty to a misdemeanor charge of possession of marijuana, which, under the Oklahoma criminal code, carries a sentence up to a year. ROA Vol.X, at pages 5 and 29. The district court excluded this evidence proffered for the purpose of impeaching Longacre's credibility on the basis that the sentence of his conviction was less than a year. On the basis of the record before us, we find the court's ruling on this evidentiary matter was proper under F.R.Evid. 609(a).

**3.** Before it was amended in 1982, the Oklahoma Implied Consent Law, 47 O.S.Sec. 752 (1967) prohibited the admission of blood alcohol test results in a civil action.

**4.** Rule 608(b), F.R.Evid., states that "(s)pecific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into *on cross examination* of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (Emphasis added).

testimony on Longacre's refusal to comply with the sobriety test requirements. The record makes clear that it was merely cumulative to Officer Wilson's testimony, who testified about his observations of the inebrious behavior exhibit by Longacre upon his arrival at the scene of the accident. *See* F.R.Evid. 403. We conclude that the district court did not abuse its discretion in determining the evidence sought by Bennett for impeachment was inadmissible. This evidence was properly excluded.

Bennett also contends that he is entitled to a new trial on the basis that the verdicts for both compensatory and punitive damages are inadequate compensation for the injuries sustained by him. Bennett has not made any claims of error in the court's instructions on damages to the jury. He merely alleges that the damages awarded are unreasonably insufficient as to indicate passion and prejudice on the part of the jury.

It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function. The trier of the facts, who has the first-handed opportunity to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party. *See Rosen v. LTV Recreational Development, Inc.*, 569 F.2d 1117, 1123 (10th Cir.1978). We have held that the amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it. *Hitchcock v. Weddle*, 304 F.2d 735, 737 (10th Cir.1962). We will not disturb a jury's finding on damages unless it is so unreasonable "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial ..." *Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir.1962).

We find the record discloses no evidence to support a finding of passion or prejudice on the part of the jury, and it fully supports the amount of damages awarded by the jury. The only tangible criteria we have in measuring the total amount of the damage awards is the medical expenses of $1,319.25. The jury returned a verdict of $4,319.25 as compensatory damages for past and future pain and suffering, loss of earning capacity and contemplated future medical expenses, in accordance with the court's instructions on damages. The jury also awarded Bennett punitive damages of $5,000. There was conflicting medical testimony as to the extent and seriousness of Bennett'e injuries proximately caused by the negligence of Longacre. The jury could have chosen to believe that not all of Bennett's alleged injuries were caused by the accident, but rather they were attributable to a pre-existing degenerative arthritic condition. We do not and cannot retry factual determinations made by a jury. Our appellate function is completed when we are convinced that an evidentiary basis in the record supports the jury's verdict. *Lavender v. Kurn*, 327 U.S. 645, 652–654, 66 S.Ct. 740, 743–744, 90 L.Ed. 916, 922–923 (1946). We find there was sufficient evidence in the record to support the amount of damages awarded. *See Mid-west Underground Storage, Inc. v. Porter*, 717 F.2d 493, 500–502 (10th Cir.1983). We hold as a matter of law that the damages awarded were not so manifestly inadequate as to shock our judicial conscience and compel a new trial.

The judgment of the district court is AFFIRMED.