**Brian K. BLACK, Plaintiff-Appellant,**

v.

**HIEB'S ENTERPRISES, INC.,
Defendant-Appellee.**

No. 83–2166.

United States Court of Appeals,
Tenth Circuit.

Nov. 14, 1986.

Michael J. Friesen (Phyllis F. Wendler, Michael J. Friesen, P.A., with him on the briefs), Michael J. Friesen, P.A., Garden City, Kan., for plaintiff-appellant.

T.J. Carney (Casey Law, Turner and Boisseau, Chartered, with him on the brief) Turner and Boisseau, Great Bend, Kan., for defendant-appellee.

Before HOLLOWAY, BARRETT and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff-appellant Brian Black (Black) brought this products liability suit against defendant-appellee Hieb's Enterprises, Inc. (Hieb). A jury trial was conducted, and the jury returned a verdict allocating fault and assessing damages. Black moved for a new trial and to correct the verdict. The trial judge denied both of these motions, and Black appeals both denials. Black also appeals the lower court's decisions to exclude from the evidence presented at trial certain deposition testimony by Mr. Hieb which referred to his liability insurance, and to direct a verdict in favor of Hieb on the issue of punitive damages. We affirm the district court on all issues.

In January 1981, Black was injured during an attempt to tow his vehicle out of a snow bank. Black and Fred Hemmert (Hemmert) attempted to pull Black's vehicle out of the snow by fastening one end of a synthetic rope belonging to Hemmert to the rear of Black's vehicle, and attaching the other end of the rope to the hitch ball on the rear bumper of Hemmert's truck. As the synthetic rope was pulled taut, the hitch ball on Hemmert's truck broke off of the bumper. The stored energy in the rope caused the hitch ball to be propelled through the rear window of Black's vehicle. The ball struck Black in the face, causing facial fractures, scarring, the loss of an eye, and dental injuries.

Black brought this diversity suit in the federal district of Kansas. 28 U.S.C. § 1332. Black's complaint contained theories of strict products liability, negligence, and breach of warranty against the manufacturer of the rope (Hieb), several entities involved in the distribution of the rope, and the manufacturer and distributor of the hitch ball. The complaint also contained a prayer for punitive damages against these parties. No claim was brought against Hemmert. Prior to trial by jury, all named defendants except Hieb were dismissed from the suit. The trial judge granted a directed verdict in favor of Hieb on the punitive damages claim. Fed.R.Civ.P. 50; Rec. vol. II at 670–71. The jury returned a verdict allocating fault as follows: Black—45%, Hemmert—45%, Hieb—10%, hitch ball manufacturer—0%. Rec. vol. I at 234–35. The total damages to Black are specified in the special verdict form to be $55,000. *Id.* Judgment was entered in accordance with the jury verdict. Rec. vol. I at 238. The net result of the jury's fault allocation and damage assessment as reflected in the special verdict was a $5,500 award from Hieb to Black. Rec. vol. I at 268, vol. II at 709.

After judgment was entered, Black filed a motion for new trial, along with a motion requesting the district court to correct the net amount awarded to Black. The lower court denied both motions, noting that the case had been fully and fairly tried, and that it would not invade the province of the

jury and disturb the verdict. Rec. vol. II at 717–22. Black filed a timely appeal with this court, appealing the denial of the post-trial motions, as well as the trial court's directing of a verdict as to punitive damages and an evidentiary ruling pertaining to evidence of Hieb's liability insurance. 28 U.S.C. § 2107.

Black first contends that the trial judge erred in denying his motion for new trial, and that a new trial is proper because the jury's verdict (1) awards inadequate damages and (2) is clearly against the weight of the evidence. We disagree with both contentions.

 In reviewing the trial judge's determination that the damages awarded by the jury were not so inadequate as to require a new trial, we are to determine whether the trial judge has abused his discretion. *Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18, 19–20 (10th Cir.1972). However, no abuse of discretion will be found unless the verdict is so inadequate "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir.1985) (quoting *Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir.1962)). Absent such a showing of passion or prejudice, the jury's finding on damages is considered inviolate. *Acree v. Minolta Corp.*, 748 F.2d 1382, 1388 (10th Cir. 1984); *Barnes v. Smith*, 305 F.2d at 228. In the present case, Black has offered no objective evidence to indicate passion or prejudice on the part of the jury. While such bias or passion might be inferred from the unreasonable inadequacy of the verdict itself, *Brown v. Richard H. Wacholz, Inc.*, 467 F.2d at 20 n. 2, the $55,000 figure in this case is not so inadequate as to raise such an inference.

In this case, as in most cases, "the only guide available upon review to test the properness of an award is a comparison of amount with injury." *Barnes v. Smith*, 305 F.2d at 228. *See also Brown v. Richard H. Wacholz, Inc.*, 467 F.2d at 20 n. 2. In determining the adequacy of a damage

award, we look to the total amount of damages awarded by the jury prior to reduction to account for allocation of fault. *See Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 182–83 (5th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). The special verdict returned by the jury reflected a total amount of $55,000 to compensate Black for his injuries. The injuries, as claimed by Black in both his complaint and amended complaint, include "facial lacerations and scarring, facial fractures, the loss of one eye, emotional harm, loss of employment and employment prospects, pain and suffering now and in the future, loss of marital opportunity and other damages." Rec. vol. I at 2, 13. The trial judge instructed the jury to award damages that would compensate Black for past and future injuries including pain, suffering, disability, disfigurement, mental anguish, medical expenses, and loss of income. Rec. vol. I at 222.

The medical expenses in this case serve as objective evidence as to one element of Black's damages. *See Bennett v. Longacre*, 774 F.2d at 1028. At the time of the trial, these medical bills totaled approximately $6,000. The verdict of $55,000 is well in excess of the accrued medical expenses, awarding approximately $49,000 for Black's damages other than those medical expenses which had been paid at the time of trial. Thus, this is not a case of the jury ignoring or failing to take into account the various elements of damages other than out-of-pocket or accrued damages. *See Brown v. Richard V. Wacholz, Inc.*, 467 F.2d at 20–21.

The jury heard testimony regarding the past medical expenses and future medical expenses that might be incurred, as well as testimony regarding pain and suffering and the effect of the accident on Black's life. Furthermore, the jury had an opportunity to observe Black and determine the extent of any disfigurement resulting from the accident. It was the jury's function, as the trier of fact, to determine the amount of damages that would fairly compensate

Black, and the jury has wide discretion in making that determination. *Bennett v. Longacre,* 774 F.2d at 1028. Our review of the record confirms the trial judge's conclusion that the evidence was fairly before the jury and their decision should not be overturned. While it is indeed difficult to place a dollar amount on personal injuries like those incurred by Black, the award of $55,000 for Black's injuries, although disappointing to the trial judge, is not so inadequate as to shock the judicial conscience and raise an inference of passion, prejudice, or other improper cause. Accordingly, we cannot say that the denial of a new trial for inadequacy of the damages was a clear abuse of discretion by the trial judge.

Black further asserts that the trial judge erred in failing to grant a new trial on the grounds that the jury's determinations as to both damages and allocation of fault were clearly against the weight of the evidence. We disagree.

A motion for new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court. *Brown v. McGraw-Edison Co.,* 736 F.2d 609, 617 (10th Cir.1984); *Harris v. Quinones,* 507 F.2d 533, 535 (10th Cir.1974); *Community Nat'l Life Ins. Co. v. Parker Square S & L Ass'n,* 406 F.2d 603, 605 (10th Cir.1969). The trial court's decision to deny a motion for a new trial will stand absent a showing of a manifest abuse of discretion. *Brown v. McGraw-Edison Co.,* 736 F.2d at 617; *Howard D. Jury, Inc. v. R & G Sloane Mfg. Co., Inc.,* 666 F.2d 1348, 1352 (10th Cir.1981); *Walter v. Warner,* 298 F.2d 481, 484 (10th Cir.1962). The inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence. *Champion Home Builders v. Shumate,* 388 F.2d 806, 808 (10th Cir.1967); *Locke v. Atchison, Topeka & Santa Fe Ry. Co.,* 309 F.2d 811, 817 (10th Cir.1962); *Prebble v. Brodrick,* 535 F.2d 605, 617 (10th Cir.1976).

The amount of damages awarded by the jury can be supported by any competent evidence tending to sustain it, and "[o]ur appellate function is completed when we are convinced that an evidentiary basis in the record supports the jury's verdict." *Bennett,* 774 F.2d at 1028. As noted earlier, evidence of Black's injuries was placed before the jury, and the jury made its determination as to damages. Black argues, however, that "the evidence was more than sufficient to support another verdict." Appellant's brief at 9. While this assertion might well be true, it is not the test we apply in reviewing the trial judge's denial of the motion for new trial. Our review of the record indicates that the jury's verdict of $55,000 to compensate Black for his injuries was not clearly, decidedly, or overwhelmingly against the weight of the evidence.

Black also contends that the jury's allocation of fault, finding Black 45% responsible for his injuries, was unsupported by the evidence. In this diversity action, state law governs insofar as the substantive law of products liability is concerned. *Martin v. Unit Rig & Equipment Co., Inc.,* 715 F.2d 1434, 1438 (10th Cir.1983). The Kansas comparative negligence statute is applicable to all of the products liability claims made by Black against Hieb: negligence, strict liability, and breach of implied warranty. *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 634 P.2d 1127, 1131 (1981); *Kennedy v. City of Sawyer,* 618 P.2d 788, 798 (Kan.1980). Furthermore, under Kansas comparative negligence law, the allocation of the parties' proportionate negligence is a question for the trier of fact. *Scales v. St. Louis-San Francisco Railway Co.,* 2 Kan.App.2d 491, 582 P.2d 300, 306 (1978); Kan.Stat.Ann. § 60–258a(b) (1983).

■ The jury heard testimony regarding Black's knowledge as to the propensities of the tow rope and the dangers inherent in any towing operation, his past practices in towing situations, and his conduct in this particular towing operation. The trial judge correctly instructed the jury that Black has a duty to use ordinary care for his own safety and protection, to use ordi-

nary care regarding dangerous conditions about which he knows and understands or about which he should know and understand, and that the failure to use such ordinary care constitutes negligence. Rec. vol. I at 218. At the hearing on the motion for new trial and to correct the verdict, the trial judge noted that persuasive arguments were made to the jury regarding Black's knowledge as to the propensities of the rope and that the evidence of such knowledge was before the jury. Rec. vol. II at 720–21. While Black contends that such knowledge of the rope's propensities does not amount to negligence, our review of the record indicates that the totality of the evidence pertaining to Black's knowledge and actions amply supports the jury's finding that Black's conduct contributed to his injuries. Again, the verdict was not clearly, decidedly, or overwhelmingly against the weight of the evidence, and the trial judge correctly denied Black's motion for new trial.

■ Black next argues that the trial court should have corrected the jury's verdict to enable Black to receive $55,000 from Hieb. In support of this contention, Black speculates that the jury actually found damages of $550,000, but went ahead and performed the computation necessary to determine the amount of Hieb's liability. Thus, according to appellant, the $55,000 figure that the jury returned as its calculation of total damages was actually the amount the jury intended Hieb to pay for his ten percent liability. We cannot accept Black's contentions.

Black offers no evidence to support his conjectural allegations as to the jury's intended award. Black had a right to poll the jury before it was discharged, *Baker v. Sherwood Construction Co., Inc.*, 409 F.2d 194, 195 (10th Cir.1969), and was expressly given the right to confer with the jurors after the verdict was delivered so long as he did not inquire into their deliberative process. Rec. supp. vol. I at 11. Black, however, has failed to come forward with support for his claim.

In his motion below and argument before this court, Black contends that the award is so repugnant and inadequate that the award itself demonstrates that the jurors intended to award more, but simply misunderstood or disregarded the judge's instructions. The jury was specifically instructed to award Black "such amount of money as will reasonably compensate him for his injuries and losses." Rec. vol. I at 222. The jury was further instructed that the judge would reduce the amount of damages awarded Black by the percentage of fault attributable to Black. Rec. vol. I at 221. Finally, the verdict form itself clearly called for a determination of total, unallocated damages: "Without considering the percentage of fault found in No. 6 herein, what total amount of damages do you find was sustained by plaintiff Brian K. Black?" Rec. vol. I at 235. The jury responded by entering a figure of $55,000. In light of the complete absence of evidence to support Black's contentions, as well as our earlier determination that the $55,000 verdict for total damages was not inadequate, we find no reason to infer that the jury misunderstood or disregarded the judge's instructions or the questions on the verdict form, or that they intended that Hieb should pay Black $55,000. The trial court properly refused to "correct" the verdict.

■ Black next challenges the trial court's decision to direct a verdict in Hieb's favor on the issue of punitive damages. While Kansas law governs as to the substantive products liability law, we apply federal procedural law when reviewing the lower court's decision to direct a verdict. *Martin v. Unit Rig & Equipment Co., Inc.*, 715 F.2d at 1438. In reviewing a trial court's decision to direct a verdict, we apply the same standard used by the trial court in passing on the motion: "whether the evidence is sufficient to create an issue for the jury." *Wren v. Spurlock*, 798 F.2d 1313, 1317 (10th Cir.1986). Furthermore, we must view the evidence in the light most favorable to the non-moving party, in this case Black. *Id.*

■ In diversity cases involving damages, the federal court must look to appropriate state law to ascertain the elements of the allowable damages. *Brown v. Richard H. Wacholz, Inc.,* 467 F.2d at 20. Punitive damages are permitted under Kansas law "whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy." *Wooderson v. Ortho Pharmaceutical Corp.,* 235 Kan. 387, 681 P.2d 1038, 1061, *cert. denied,* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984) (quoting *Cantrell v. Amarillo Hardware Co.,* 226 Kan. 681, 602 P.2d 1326 (1979)). "Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured parties' rights, the purpose being to restrain and deter others from the commission of like wrongs." *Id.*

The trial court concluded that, although Mr. Hieb could bind the corporation for punitive damages, there was no evidence of any actions on the part of Mr. Hieb or the corporation that would properly give rise to an award of punitive damages. Rec. vol. II at 670. The only evidence that Black puts forth in his claim for punitive damages is a statement made by Mr. Hieb in deposition regarding Hieb's liability insurance.

Mr. Hieb's deposition is not a part of the record, and Black does not provide us with the text of Hieb's allegedly wanton statement. However, it is apparent from the trial record, rec. vol. IV at 42–51, 169–175, and appellee's brief at 26, that the relevant statement came during questioning concerning the development of advertising and promotional materials for the sale of the rope. In response to the question "[d]id you ever have a discussion with your wife regarding the ability of this rope to break?", Mr. Hieb stated as follows: "Oh, definitely, because we took out insurance. Definitely. It's still a piece of towing equipment."

■ Black cites to this statement alone as evidence supporting his argument that the trial court erred in directing the ver-

dict. However, the statement does not demonstrate a wanton attitude on the part of Mr. Hieb, and does not constitute sufficient evidence to submit the issue of punitive damages to the jury. Mr. Hieb's prudent securing of liability insurance does not itself create liability on the part of Hieb, and such safeguard certainly does not give rise to liability for punitive damages. Our review of the record confirms that the trial court correctly directed a verdict in Hieb's favor on the issue of punitive damages.

Finally, Black contends that the trial court erred in refusing to admit evidence of Hieb's liability insurance at trial. "On appeal, we do not disturb the trial court's ruling on evidentiary matters absent an abuse of discretion." *Bennett v. Longacre,* 774 F.2d at 1027. Evidence regarding liability insurance is generally not admissible to show liability. Fed.R.Evid. 411; Kan.Stat.Ann. § 60–454 (1983). Black, however, contends that the evidence of insurance should be allowed in this case because it is offered for reasons other than demonstrating liability.

Black first argues that the evidence of insurance shows Hieb's wanton conduct for purposes of the punitive damages claim. Black again relies upon Hieb's deposition statement for this proposition. The trial judge rejected this argument, stating that the introduction of the evidence would be prejudicial and was "wholly irrelevant" in light of the total absence of evidence suggesting wanton conduct on the part of Hieb. Rec. vol. IV at 174. Hieb's statement does not constitute evidence of wanton behavior, and no independent evidence of such behavior was presented at trial.

Black also asserts that the insurance evidence is admissible to enable the jury to assess Hieb's total financial situation, and thus determine the amount of punitive damages necessary to have an impact upon the defendant. *See Ayers v. Christiansen,* 222 Kan. 225, 564 P.2d 458, 461 (1977). Because we decide that the trial court correctly directed a verdict in favor of Hieb on the punitive damages issue, the issue of punitive damages was not before the jury,

and Hieb's financial situation was not relevant. The trial judge was correct in refusing to admit the evidence concerning Hieb's liability insurance.

AFFIRMED.