**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                  Elisabeth A. Shumaker
Clerk                                                                        Chief Deputy Clerk

January 15, 1999

**TO:**  ALL RECIPIENTS OF THE OPINION

**RE:**  97-2102, *Anaeme v. Diagnostek, Inc.*
        Filed on January 6, 1999

       The slip opinion filed in this case contains a clerical error on page 15, lines 9-16, last sentence of the paragraph.  The corrected sentence should appear as follows:

       Hicks, 509 U.S. at 519; accord McCullough, 140 F.3d at 1128 (noting that Supreme Court has "made clear that a plaintiff in a pretext case must establish '*both* that the reason was false, *and* that discrimination was the real reason'") (citations omitted); cf. Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1548 (10th Cir. 1997) (holding, in context of challenge to peremptory strike of juror, that plaintiff must persuade fact finder that reason proffered was unworthy of belief and that the adverse action was racially motivated).

A copy of the corrected page 15 is attached for your convenience.

                                        Sincerely,
                                        Patrick Fisher, Clerk of Court


                                        Keith Nelson
                                        Deputy Clerk


encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHIBU C. ANAEME,

      Plaintiff - Appellant,

v.

DIAGNOSTEK, INC.; HEALTH
CARE SERVICES; and HPI,

      Defendants - Appellees.

No. 97-2102

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-95-684-SC)**

---

Susan G. Chappell (Paul Livingston with her on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellant.

Gregory L. Wilmes of Wilmes & Associates, Minneapolis, Minnesota (Julie Savoie Wingert, General Counsel, MedManagement, LLC, Plymouth, Minnesota, with him on the brief), for Defendants-Appellees.

---

Before **PORFILIO**, **McKAY**, and **BRORBY**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

In June 1995, Plaintiff Chibu Anaeme brought an action against Defendants Diagnostek, Inc., Health Care Services, and HPI in which he claimed disparate treatment and disparate impact under Title VII and racial discrimination under 42 U.S.C. § 1981. This case stems from Plaintiff's alleged submission to Defendants of approximately sixty employment applications for a staff pharmacist position between 1991 and 1994. Plaintiff received his Bachelor's of Science degree in Pharmacy from the University of New Mexico in 1986 and became a licensed pharmacist in New Mexico in 1989. In his complaint, Plaintiff alleged that Defendants discriminated against him on the basis of his race (Nigerian American) by failing to hire him or even interview him for a position as a staff pharmacist.

The district court granted summary judgment in favor of Defendants on Plaintiff's disparate impact claim,[1] but it denied summary judgment on the disparate treatment and section 1981 claims. At the close of Defendants' case at trial, Plaintiff moved for a judgment as a matter of law. The court denied his motion. Subsequently, the jury found that Plaintiff's race was not a determining factor in Defendants' failure to hire him. Plaintiff moved for a new trial on three

---

[1]It is not clear whether Plaintiff appeals the district court's partial grant of summary judgment to Defendants on his disparate impact claim. Because Plaintiff has not argued this issue in his brief or in oral argument, he has waived it and we do not address it. See Abercrombie v. City of Catoosa, Okla., 896 F.2d 1228, 1231 (10th Cir. 1990).

grounds:  (1) the jury's verdict was contrary to the weight of the evidence; (2) after-acquired evidence prejudiced the jury despite an instruction not to consider this evidence in determining liability; and (3) the judgment was a miscarriage of justice.  The district court denied the motion for a new trial.  Plaintiff appeals the district court's denial of his motions for a judgment as a matter of law and a new trial.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

Plaintiff's primary contention on appeal is that he was entitled to a judgment as a matter of law because Defendants failed to produce a legitimate, nondiscriminatory reason for not hiring him.  He asserts that after he established a prima facie case of racial discrimination, Defendants did not meet their burden of providing a legitimate, nondiscriminatory reason for the alleged discriminatory action.  In response, Defendants assert that they came forward with a legitimate, nondiscriminatory reason for not hiring Plaintiff, namely, that they had no record of receiving his applications.  Defendants claim that they supported this explanation at trial with admissible evidence showing that they had no record of Plaintiff's applications, which indicated to them that he did not apply for a job. Defendants also assert that admissible evidence supported their explanation by indicating that, even if they had received any of Plaintiff's applications, they

either lost them, discarded them after a period of time, or rejected them for facial deficiencies. Moreover, Defendants argue, they did not discriminate against Plaintiff on the basis of his race, and Plaintiff did not meet his ultimate burden of proving racial discrimination.

Applying the same standard as the district court, we review de novo the district court's denial of a motion for judgment as a matter of law. See Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997). Judgment as a matter of law "is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. In reviewing a motion for judgment as a matter of law, we must construe the evidence and the inferences therefrom most favorably to the nonmoving party. See Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). "[W]e may not weigh the evidence, [assess] the credibility of witnesses, or substitute our judgment for that of the jury." Id.; see also Mason, 115 F.3d at 1450.

Title VII of the Civil Rights Act of 1964 prohibits the failure or refusal to hire any individual on the basis of race, color, religion, gender, or national origin. See 42 U.S.C. § 2000e-2(a)(1). Under Title VII, the crucial inquiry is whether "the defendant intentionally discriminated against the plaintiff." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The Supreme Court

has explained that a plaintiff may prove intentional discrimination either by direct or circumstantial evidence. See United States Postal Serv. Bd. of Governors v. Aiken, 460 U.S. 711, 714 n.3 (1983); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 526 (1993) (Souter, J., dissenting) (stating that McDonnell Douglas framework allows "plaintiffs and courts to deal effectively with employment discrimination revealed only through circumstantial evidence"). Because no direct evidence of intentional discrimination existed in this case, Plaintiff utilized the burden-shifting format established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to attempt to show intentional discrimination.

Where the plaintiff must prove his case by circumstantial evidence, as here, he first must make out a prima facie case of discrimination. See id. at 802-04 (setting forth the burden-shifting framework). To establish a prima facie case of disparate treatment as a result of the prospective employer's failure to hire, a plaintiff must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he "was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 252-53; see McDonnell Douglas, 411 U.S. at 802. The establishment of the plaintiff's prima facie case creates a presumption that the defendant unlawfully discriminated against the plaintiff. See Burdine, 450 U.S. at 254. The defendant then must articulate a legitimate, nondiscriminatory reason for the failure to hire

the plaintiff. See id. If the defendant has produced such a justification, the plaintiff then has the opportunity to convince the jury that the reason offered by the defendant is merely pretext and that the defendant's adverse employment action was motivated by racial discrimination. See Hicks, 509 U.S. at 508, 515-16.

The ultimate question under Title VII of whether the defendant intentionally discriminated against the plaintiff is one for the trier of fact to decide. See id. at 518-19 (citing Aikens, 460 U.S. at 714-16); Elmore v. Capstan, Inc., 58 F.3d 525, 527 (10th Cir. 1995). Consequently, once the McDonnell Douglas framework of presenting proof is complete, "we are left with 'the single overarching issue whether [the] plaintiff has adduced sufficient evidence to warrant [the trier of fact's] determination that adverse employment action was taken against him on the basis of [race].'"[2] Elmore, 58 F.3d at 530 (quoting Fallis

_____

[2]The Supreme Court has stated that once a defendant produces evidence of a legitimate, nondiscriminatory reason, "the factfinder then must decide whether the [action] was discriminatory" and "the McDonnell-Burdine presumption drops from the case." Aikens, 460 U.S. at 715. In light of this directive, we repeatedly have recognized that, after a full trial on the merits, the steps in the burden-shifting framework of McDonnell Douglas are largely irrelevant, see, e.g., Elmore, 58 F.3d at 530 n.7; Sanchez v. Phillip Morris Inc., 992 F.2d 244, 246 (10th Cir. 1993); Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1237 (10th Cir. 1991). However, because we believe that Plaintiff fundamentally misunderstands the requirements of the law in this arena, we elect to address his argument that Defendants' failure to present admissible evidence of a nondiscriminatory reason for not hiring him required a judgment as a matter of law in his favor.

v. Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir. 1991)).  In this regard, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  Hicks, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253)).

The district court's finding that Plaintiff "satisfied the minimal requirements" of a prima facie case is not disputed.  Id. at 506.  Instead, Plaintiff challenges the court's determination that Defendants met their burden of production by articulating a legitimate, nondiscriminatory reason for not hiring him.  He contends that Defendants failed to meet this burden for two reasons: (1) Defendants cannot base their reason on inadmissible after-acquired evidence; and (2) Defendants' explanation did not raise a genuine issue of material fact because it was disputed by four letters from Defendants to Plaintiff indicating that they received four of his applications.  Therefore, Plaintiff claims, the presumption of unlawful discrimination remained unrebutted and he was entitled to a judgment as a matter of law.  Plaintiff's arguments are without merit for a number of reasons.

First, we believe that Defendants met their burden of production.  The defendant's burden to articulate a nondiscriminatory reason has been characterized as an "exceedingly light" one.  Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983).  "The defendant need not persuade the court

that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254-55. To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. at 257. However, "the determination that a defendant has met its burden of production . . . involve[s] no credibility assessment." Hicks, 509 U.S. at 509. The Supreme Court emphasized in Hicks that, "[b]y producing *evidence* (whether ultimately persuasive or not) of nondiscriminatory reasons, [employers] sustain[] their burden of production, and thus place[] themselves in a 'better position than if they had remained silent.'" Id.

Defendants met their burden by articulating a legitimate, nondiscriminatory reason and by supporting it with trial testimony. Their explanation, however, is unique because Plaintiff was not known to or remembered by Defendants when this suit was filed. Consequently, the premise of Defendants' explanation was that, based on their review of their personnel records and application files, they had no record that Plaintiff ever applied for a pharmacist position. Several employees testified about this explanation. Pamela Otero testified that she was unable to locate any applications made by Plaintiff. Teresa Michael and Mark

Eastham testified that they had no recollection of any applications Defendants might have received. Ms. Michael and Mr. Eastham further testified that, because they could not find any of Plaintiff's alleged applications, they deduced that Defendants had not received any. Mr. Woodrow Storey, a former pharmacy manager and hiring manager for Defendants, testified that he had never seen any applications from Plaintiff and that he knew no other person who might have. He also testified that Plaintiff's applications could have been lost or misplaced and likely would have been discarded if they contained facial omissions. Additionally, the applications and resumes produced by Plaintiff during discovery contained omissions and inconsistencies on questions about employment history, dates of employment, names and phone numbers of supervisors, and the like, and they indicated that Plaintiff had held many positions but had not remained in any one position for very long. According to testimony at trial, Defendants' practice was to reject any application containing such facial deficiencies.

In effect, the reason proffered and the evidence presented by Defendants was grounded in their lack of knowledge as to who Plaintiff was, what kind of applicant he was, and why they did not hire him. Because of this lack of knowledge, Defendants could only make reasoned judgments about why they did not hire or interview Plaintiff. Defendants surmised that they had no record of Plaintiff's applications because (1) he never applied, (2) his applications were lost

or discarded by the personnel department, or (3) his applications were rejected because of facial deficiencies. Prospective employers who are in this unique and seemingly uncommon posture should not be stuck without a legitimate, nondiscriminatory explanation, and we know from Hicks that their only alternative–remaining silent–would place them in an untenable position. See id. (stating that producing evidence of a nondiscriminatory reason is better than saying nothing at all, even if the evidence is not ultimately persuasive). If we accepted Plaintiff's argument, such prospective employers would never be able to rebut a prima facie case because they would be unable to proffer a reason other than that they did not have a record of their relationship to the plaintiff. This result is not consistent with the intent of Title VII or our case law. Accordingly, we conclude that Defendants' explanation is the only legitimate one that they possibly could have proffered which "would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257.

Second, Plaintiff's arguments fail because Defendants' legitimate, nondiscriminatory reason is not based on inadmissible after-acquired evidence. Instead, evidence concerning the quality of Plaintiff's applications and resumes and the nature of his employment history simply constitutes circumstantial proof of Defendants' legitimate, nondiscriminatory reason for not hiring Plaintiff. This

evidence helps to explain Defendants' general employment practices by showing how they customarily responded to applications similar to Plaintiff's. From this circumstantial evidence, the jury could infer that Defendants did not intentionally discriminate against Plaintiff on the basis of race.

Our characterization of the evidence regarding Defendants' general hiring practices and the evidence about Plaintiff's applications, resume, and employment history conflicts with Plaintiff's characterization. Plaintiff argues that the disputed evidence is the type of after-acquired evidence contemplated in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995). In McKennon, the Supreme Court held that where an employee's discharge was based solely on her age and the employer later discovered wrongful conduct by the employee that would have led to her discharge, the employee was not barred from relief under the Age Discrimination in Employment Act. See id. at 358-60. Although the Court determined that the after-acquired evidence concerning the employee's wrongful conduct could not be used to preclude her from obtaining relief for intentional discrimination, it held that such evidence could limit the employee's claim of damages.[3] See id. at 361-62. Two factors critical to the Court's decision in McKennon distinguish it from this case.

_____

[3]We note that this second part of McKennon, holding that after-acquired evidence may be considered for the question of the plaintiff's damages, is not helpful to our analysis in this case. No issue of damages is before this court.

The Supreme Court emphasized in <u>McKennon</u> that its holding was partly premised on the employer's concession, for summary judgment purposes, that the sole reason for the employee's discharge was intentional age discrimination. <u>See id.</u> at 359. In this case, however, Defendants did not concede discrimination for any purpose. In fact, the trial court was engaged in the very process of ascertaining the motive for the failure to hire Plaintiff, which is "an essential element in determining whether the employer violated the federal antidiscrimination law." <u>Id.</u> at 360. Unlike in <u>McKennon</u>, where the question of whether intentional discrimination occurred was not at issue, whether Defendants intentionally discriminated against Plaintiff on the basis of race is the crux of this case.

The Court also based its holding in <u>McKennon</u> on the nature of the after-acquired evidence: Ms. McKennon's deposition testimony revealed that she had engaged in grave misconduct *during her employment* which would have constituted legitimate grounds for her discharge. <u>See id.</u> at 356. This case is entirely different from the controlling facts in <u>McKennon</u> because Plaintiff obviously was never employed by Defendant at any time. Further, unlike the employer in <u>McKennon</u>, Defendants do not contend that Plaintiff engaged in any misconduct that should excuse their alleged discriminatory behavior. Instead, much of the evidence at issue relates either to Plaintiff's employment history

before he ever applied for a position with Defendants or to Defendants' general hiring practices existing at the time Plaintiff allegedly applied for jobs. Cf. Carr v. Woodbury County Juvenile Detention Ctr., 905 F. Supp. 619, 627 (N.D. Iowa 1995) (declining to extend employer's McKennon defense to limit damages to plaintiff's post-termination conduct); Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667, 682-83 (S.D.N.Y. 1995) (same). Moreover, the evidence to which Plaintiff objects was elicited by Defendants to question the accuracy or veracity of Plaintiff's testimony that he was qualified, that he was a stellar candidate, and that he even applied for as many positions as he said he did. It is clear that once we have accepted that Defendants met their burden of producing a legitimate, nondiscriminatory reason, the issue of whether Plaintiff's prima facie case is supported by a preponderance of the evidence is still before the trier of fact. See Hicks, 509 U.S. at 509-515; Aikens, 460 U.S. at 715. Thus, Defendants were permitted to litigate whether Plaintiff was qualified for a pharmacist position, and they were entitled to submit evidence about Plaintiff's qualifications in this regard. In short, McKennon's discussion on after-acquired evidence does not apply to this case and the evidence to which Plaintiff objects was nonetheless admissible to show that Plaintiff's prima facie case was not supported by a preponderance of the evidence.

Additionally, in this case, Defendants' proffered reason did not so much

-13-

speak to their motivations as it did to their actions in failing to hire Plaintiff. In other words, Defendants claim that they did not hire Plaintiff because they had no record of his having applied for a position, which must mean either that (1) he did not apply for a pharmacist position, (2) they lost or discarded his applications, or (3) they rejected his applications because they contained facial omissions and thus did not merit further examination. Because Defendants simply did not know who Plaintiff was, their proffered reason does not explain what *motivated* them or what their *intent* was as to Plaintiff's applications. For these reasons, we do not believe that McKennon was intended to encompass this unusual situation where the prospective employer has no recollection of the prospective employee. We hold that Defendants' legitimate, nondiscriminatory reason is supported by admissible circumstantial evidence of their employment practices and Plaintiff's resumes, applications, and employment history.

Third, Plaintiff is not entitled to a judgment as a matter of law merely because he presented evidence that may have contradicted Defendants' legitimate, nondiscriminatory reason. During discovery and at trial, Plaintiff presented four letters from Defendants which indicated that they had received four of Plaintiff's applications. Generally, evidence challenging the defendant's legitimate, nondiscriminatory reason goes to the plaintiff's burden of establishing pretext. "Evidence discrediting an employer's nondiscriminatory explanation,"

McCullough v. Real Foods, Inc., 140 F.3d 1123, 1128 (8th Cir. 1998), may be sufficient to persuade the trier of fact of racial intent "in some cases but not in all cases." Nelson Boatmen's Bancshares, Inc., 26 F.3d 796, 801 (8th Cir. 1994). This is because "[i]t is not enough . . . to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." Hicks, 509 U.S. at 519; accord McCullough, 140 F.3d at 1128 (noting that Supreme Court has "made clear that a plaintiff in a pretext case must establish '*both* that the reason was false, *and* that discrimination was the real reason'") (citations omitted); cf. Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1548 (10th Cir. 1997) (holding, in context of challenge to peremptory strike of juror, that plaintiff must persuade fact finder that reason proffered was unworthy of belief and that the adverse action was racially motivated).

Accordingly, Plaintiff's attack on the credibility of the proffered explanation does not mean either that the explanation fails to raise a genuine issue of fact or that a judgment for him is required. See Hicks, 509 U.S. at 504, 508-11 (stating that trier of fact's rejection of employer's asserted reasons for its action does not mandate a finding for plaintiff). The Supreme Court stated in Hicks that a plaintiff who makes a prima facie case is not entitled to judgment as a matter of law even where the fact finder disbelieves or rejects the employer's proffered reasons. See id. at 509-10. The Court emphasized that "McDonnell Douglas does

-15-

*not* say . . . that all the plaintiff need do is disprove the employer's asserted reason." Id. at 517.  Moreover, "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct." Id. at 524; see also Kendall v. Watkins, 998 F.2d 848, 851-52 (10th Cir. 1993) ("'[E]vidence that the articulated business reason for the decision was pretextual does not compel the conclusion that the employer intentionally discriminated.'") (quoting Sanchez, 992 F.2d at 247), cert. denied sub nom. Kendall v. O'Leary, 510 U.S. 1120 (1994).  Thus, although Plaintiff may have presented evidence which could be interpreted as discrediting Defendants' proffered reason, this evidence does not necessarily fulfill Plaintiff's ultimate responsibility of persuading the jury that race was a motivating factor in the employment decision.  See Hicks, 509 U.S. at 509, 514-15 ("[N]othing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable."); Hurd, 109 F.3d at 1548 (stating that the credibility of the proffered reason is relevant to whether adverse action was intentionally discriminatory, but emphasizing that plaintiff must also prove purposeful discrimination).

Therefore, if a jury does not believe the plaintiff's evidence that

-16-

discriminatory intent motivated the adverse employment action, then the plaintiff has not met his ultimate burden of persuasion even if the jury also does not believe the defendant's proffered nondiscriminatory reason. That the jury in this case did not believe Defendant's proffered reason does not mean that it believed that intentional racial discrimination was the reason for not hiring Plaintiff. See Kendall, 998 F.2d at 851-52 ("'If a plaintiff successfully proves that the defendant's reasons are not worthy of credence, the plaintiff must still prove that the true motive for the employment decision violates Title VII.'") (quoting Sanchez, 992 F.2d at 247). Because Plaintiff remained obligated to meet his ultimate burden of persuasion, the evidence presented by him to establish a prima facie case of discrimination "[was] infinitely less than what a directed verdict required." Hicks, 509 U.S. at 515. Accordingly, despite evidence that may be viewed as discrediting Defendants' legitimate, nondiscriminatory reason, the district court did not err in refusing to grant Plaintiff a judgment as a matter of law.

The final reason why Plaintiff's argument that he was entitled to a judgment as a matter of law fails is because it is premised on his misunderstanding of Hicks. Plaintiff asserts that, under Hicks, he is entitled to a judgment as a matter of law because he established a prima facie case and Defendants did not sustain their burden of production by rebutting the

presumption of discrimination.  See Appellant's Reply Br. at 8.  In fact, Hicks says that "[i]f the defendant has failed to sustain its burden but reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer."  Hicks, 509 U.S. at 509-10.  Therefore, even if Defendants had failed to meet their burden of production, Plaintiff's facts in this case were contested and reasonable minds could differ as to whether he established a prima facie case by a preponderance of the evidence.

Plaintiff did not prove that Defendants received all sixty applications that he allegedly submitted; he only presented evidence showing that they had received four of his applications.  As noted above, several defense witnesses testified that they had no recollection of any applications made by Plaintiff, and, as a result, they deduced that either they had not received any or that the applications had been lost, discarded, or rejected.  Further, Plaintiff's evidence that Defendants sent him four letters of receipt does not necessarily invalidate Defendants' explanation.  The jury could draw any number of inferences from this evidence.  For example, the jury could infer that Defendants' proffered reason was pretext.  Alternatively, the jury could draw inferences from the absence of those four applications in Defendants' employment files, along with the letters of receipt, about Defendants' hiring practices, i.e., that Defendants did what they

said they did with Plaintiff's applications–they lost, discarded, or rejected them. Thus, the evidence could be considered by the jury as circumstantial proof that Plaintiff's prima facie case was not supported by a preponderance of the evidence. Stated differently, the evidence shows that Plaintiff could have been rejected for benign reasons, not because of invidious discrimination on the basis of his race. We agree with the district court's implicit finding that reasonable minds could differ "as to whether a preponderance of the evidence establishes the facts of a prima facie case." Id. This precluded the court from granting Plaintiff a judgment as a matter of law.

For these reasons, we conclude that the court did not err in denying the motion for a judgment as a matter of law. Even assuming that Plaintiff discredited Defendants' legitimate, nondiscriminatory reason, he still was required to "prove to the factfinder that the motivation for not hiring was race."[4] Appellant's App. at 128. The district court properly left this question for the jury to decide because, when construed in a light most favorable to Defendants, the evidence did not point in only one direction–it raised a genuine issue of fact as to whether Defendants discriminated against Plaintiff. See Burdine, 450 U.S. at

---

[4]Implicit in our conclusion is our rejection of Plaintiff's allegation that the burden never shifted back to him. We have determined that Defendants met their burden of production by articulating a legitimate, nondiscriminatory reason for failing to hire Plaintiff. In any event, the burden of persuasion remains at all times with Plaintiff. See Burdine, 450 U.S. at 253.

254-55. "Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of . . . race." Hicks, 509 U.S. at 523-24.

## II.

Plaintiff's second principal argument is that the court erred in denying his motion for a new trial because the verdict was contrary to the weight of the evidence. He contends that the evidence proffered by Defendants–testimony that Defendants had hired some African-American pharmacists in Albuquerque and that race had never been a factor in their hiring decisions–was insufficient to justify a verdict for Defendants because it consisted of after-acquired evidence. We review the district court's decision to deny a motion for a new trial only for an abuse of discretion. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1193 (10th Cir. 1997). Where a new trial motion asserts that the jury verdict is not supported by the evidence, "the verdict must stand unless it is 'clearly, decidedly, or overwhelmingly against the weight of the evidence.'" York v. American Tel. & Tel. Co., 95 F.3d 948, 958 (10th Cir. 1996) (quoting Black v. Hieb's Enters., Inc., 805 F.2d 360, 363 (10th Cir. 1986)). With respect to our

-20-

review of the jury's verdict, we consider the record evidence in the light most favorable to the prevailing party. See Koch v. City of Hutchinson, 814 F.2d 1489, 1496 (10th Cir. 1987).

We disagree with Plaintiff's assertion that the jury verdict is not supported by the weight of the evidence for several reasons. First, we reemphasize our holdings which are relevant to this argument: (1) Defendants sufficiently articulated a legitimate, nondiscriminatory reason for not hiring Plaintiff, and the reason was supported by circumstantial evidence of Defendants' hiring practices and Plaintiff's resume, applications, and employment history; and (2) the evidence to which Plaintiff objects does not constitute inadmissible after-acquired evidence within the meaning of McKennon, and it is admissible to show that Plaintiff's case was not supported by a preponderance of the evidence. To these conclusions we add our determination that the record evidence could reasonably be viewed as supporting the jury's verdict.

As noted above, the ultimate question before the jury was whether Defendants intentionally discriminated against Plaintiff, see Aikens, 460 U.S. at 715; the burden of persuasion on this matter remained at all times with Plaintiff. See Burdine, 450 U.S. at 253. The plaintiff must demonstrate that similarly situated persons were treated differently. See Burdine, 450 U.S. at 258 (citing McDonnell Douglas, 411 U.S. at 804). The mere failure to hire Plaintiff as

compared to other qualified non-African-American candidates may not be sufficient to establish an inference of race discrimination. Cf. Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998) (stating that mere favorable treatment of a younger manager as compared to an older manager may not be sufficient to support inference of age discrimination). Plaintiff did not present any direct evidence that Defendants discriminated against him or anyone else on account of race, and apparently Plaintiff's prima facie case alone did not convince the jury that Defendants engaged in intentional discrimination. Although Plaintiff presented some statistical evidence that no African-American pharmacists were hired during part of the period during which he was submitting applications, Defendants countered this evidence with testimony that they had hired six of the nine African-American pharmacists registered in the state in 1994, they had offered a pharmacist position to an African-American in 1994, and race had never been a factor in their hiring decisions. The jury was free to assess the credibility of this testimony and weigh it accordingly. After learning that Plaintiff had four letters from Defendants, each of which indicated that they had received his application, Defendants did not dispute that they must have received four of Plaintiff's applications. Plaintiff, however, did not present evidence that Defendants received any other applications and the jury could have disbelieved Plaintiff's assertion that he submitted over sixty applications in a four-year

-22-

period.  Additionally, evidence in the record reasonably could support a jury determination that Defendants rejected Plaintiff's applications based on their facial deficiencies alone.  That Defendants have no record of Plaintiff's applications and had no knowledge of who Plaintiff was before the suit was filed does not make the affirmative case of intentional discrimination.  We cannot say that the jury's verdict was clearly, overwhelmingly, or decidedly against the weight of the evidence.  The district court did not err in denying Plaintiff's motion for a new trial.[5]

## III.

Finally, Plaintiff contends that he was prejudiced by the court's failure to bifurcate the liability and damages phases of the trial.  District courts have "broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused."  Easton v. City of Boulder, Colo., 776 F.2d 1441, 1447 (10th Cir. 1985) (citing Fed. R. Civ. P. 42(b)), cert. denied, 479 U.S. 816 (1986).  Our review of the record indicates, however, that Plaintiff did not ask the district court to bifurcate the proceedings.  Therefore, we decline to address his argument.  See Walker v. Mather (In re Walker), 959 F.2d

---

[5]We need not address the district court's limiting instruction on after-acquired evidence because our determination concerning such evidence makes any further discussion superfluous.

-23-

894, 896 (10th Cir. 1992) (stating that federal appellate court generally will not consider an issue on appeal that was not raised in the trial court). We note that, even if the court could have bifurcated the proceedings on its own motion under Federal Rule of Civil Procedure 42, we see no indication that it abused its discretion in not doing so. Cf. York, 95 F.3d at 958 (holding that district court did not abuse its discretion in denying motion to bifurcate because movant did not show that she was significantly prejudiced).

Accordingly, we affirm the district court's denials of Plaintiff's motions for a judgment as a matter of law and for a new trial.

AFFIRMED.