**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BIOCORE, INC. and BIOCORE
MEDICAL TECHNOLOGIES, INC.,

      Plaintiffs - Appellants - Cross-
      Appellees,

v.

HAMID KHOSROWSHAHI,

      Defendant - Appellee - Cross-
      Appellant.

Nos. 00-3170 and 00-3180
(D.C. No. 98-CV-2031-KHV)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY, HOLLOWAY** and **LUCERO**, Circuit Judges.

---

**I**

These cases are cross-appeals from a decision by the District Court for the District

of Kansas denying damages and post-judgment relief to all parties in this diversity suit.

The cases were brought by Biocore Medical Technologies, Inc. and Biocore, Inc.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of the 10th Cir. R. 36.3.

(collectively, "Biocore") against Hamid Khosrowshahi ("Khosrowshahi") and by Khosrowshahi against Biocore, Manoj Jain, Biocore's founder, and Ritu Jain, Manoj Jain's wife. Biocore asserted claims for misappropriation of trade secrets against Khosrowshani and sought damages and injunctive relief. Khosrowshani asserted his claims against Biocore and the others for unpaid but promised compensation.

The two cases were consolidated for all purposes and the few claims surviving summary judgment were tried before a single jury. The jury awarded Biocore $155,236.00 in damages on its misappropriation of trade secrets claim against Khosrowshahi. The district court, on the basis that this amount was "either too high or too low" and thus unsupported by the evidence, granted Khosrowshahi's motion for a new trial on the issues of liability and damages. The second trial, by agreement of the parties, was to the court. In that trial, the court found no trade secrets had been misappropriated and awarded no damages.

Biocore now takes an appeal from the judgment of the second trial. Khosrowshahi appeals the court's denial of his motions for judgment as a matter of law on Biocore's misappropriation of trade secret claims. He also appeals the denial of his motion for a new trial on his claims against Biocore.

## II

Biocore Medical Technologies, Inc. ("BMT"), a wholly-owned subsidiary of Biocore, Inc., is a Kansas-based producer of medical products, including collagen-based

products that assist in the healing of wounds.[1]  Biocore, Inc., founded by Manoj Jain, employed Hamid Khosrowshahi as an executive beginning in 1993.  In 1996, Khosrowshahi was promoted to the office of president of BMT.  The two men were congenial until June of 1997.  Khosrowshahi last visited the offices of Biocore and BMT in approximately May of 1997 and resigned the following month.

Khosrowshahi claims Jain promised him a 10% stock ownership in Biocore in 1993, a 10% stock ownership in BMT in 1995, a salary of $120,000 to start, and a salary increase to $150,000 after 1995.  He says he left his previous job with Medical Actions, Inc., which paid $108,000 annually, in order to take the Biocore job.  Opening Brief of Appellee Khosrowshahi in Case No. 3170 and Appellant in Case No. 3180.

Khosrowshahi had access to information regarding all stages of Biocore's manufacturing process and he kept thousands of pages of Biocore's documents when he resigned.  Prior to his resignation, Khosrowshahi began talking to Integra LifeSciences, Inc. ("Integra"), based in New Jersey, about a job.  On July 3, 1997, he signed a confidentiality agreement with Integra.  On July 9, he provided Integra samples of Biocore's products.  On July 10, he entered into a consulting agreement with Integra under which he was to receive $10,000 monthly and have as his primary responsibility to, "set forth and begin execution of an operating plan for a collagen-based wound care business."

---

[1]These and other facts recited below are taken from *Biocore et al. v. Khosrowshahi*, 96 F. Supp. 2d 1221 (D. Kan. 2000), the reported Memorandum and Order by the District Court in this litigation.

*Biocore*, 96 F. Supp. 2d at 1225. In October of 1997 Integra asked Khosrowshahi to enter into a new consulting agreement that, in part, would require him to provide a list of Biocore's customers. Khosrowshahi declined and instead signed another agreement renewing the relationship with Integra and providing that he would receive an 8% commission for sales to prior distributors of collagen wound care products and a 3% commission for sales to new distributors.

In the course of Khosrowshahi's employment with Integra, he created a business plan, dated July 23, 1997, to introduce Integra to the process of manufacturing collagen wound care products. Integra was trying to create a wound care product that would compete with Biocore's. In order to help Integra develop its collagen products, Khosrowshahi arranged to purchase Biocore's products from Biocore distributors. By January of 1998, however, the plan had come to an end and Integra never brought any collagen wound care product to market.

Biocore's collagen wound care product manufacturing process had been kept partially secret. Specifically, the formula for a key element in the process, "Chemical Z," had been kept secret and only a few Biocore employees knew it. The district court concluded that the entire process was a trade secret under Kansas law, K.S.A. § 60-3320(2). *Biocore*, 96 F. Supp. 2d at 1226.

## III

The parties present the following issues:

1.  Whether this court has jurisdiction to hear Khosrowshahi's appeal (No. 00-3180), where the plaintiff filed his notice of appeal more than one year after an entry of judgment that did not dispose of all claims;

2.  Whether the district court erred when it granted Khosrowshahi a new trial on both liability and damages, rather than either order remittitur on the ground that the jury's award of $155,236 to Biocore was unsupported by the evidence, or when it denied judgment as a matter of law in favor of Khosrowshahi;

3.  Whether the district court's finding at the second trial that Khosrowshahi had not misappropriated any trade secrets was clearly erroneous;

4.  Whether the district court erred when it denied Biocore's application for post trial injunctive relief;

5.  Whether the district court's admission of evidence regarding sales to a third entity and a conspiracy between Khosrowshahi and TAFA and its denial of a limiting instruction as to the evidence regarding sales to a third entity were reversible error; and

6.  Whether the trial court erred in denying Khosrowshahi a new trial on his claims against Biocore for deferred compensation and stock ownership.[2]

We address each of these issues in turn.

**A**

*Our appellate jurisdiction*

We must first determine whether we have jurisdiction to hear this appeal. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

Biocore argues that this court lacks jurisdiction to hear Khosrowshahi's appeal because he failed to give timely notice as required by Fed. R. App. P. 4(a)(1). That rule

---

[2]Khosrowshahi concedes that he did not move for directed verdicts on his claims and does not now appeal denial of judgment as a matter of law in his favor. Reply Brief of Khosrowshahi at 2.

- 5 -

provides, in order to appeal in a civil case, a party must file a notice of appeal within 30 days after the date of entry of the judgment or order appealed from. This time requirement is both "mandatory and jurisdictional." *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264 (1978).

Biocore argues that the relevant date of entry of judgment is the date judgment on both parties' claims was first entered, February 12, 1999. After this entry, however, the district court granted Khosrowshahi's motion for a new trial on the issues of his liability and the damage award of $155,236 to Biocore. The court reentered judgment following the second trial on May 5, 2000. Biocore argues that, as regards Khosrowshahi's original claims against Biocore, which were not retried, the date of original entry of judgment—February 12, 1999—is the relevant date, not May 5, 2000. In so arguing, Biocore relies on *Farkas v. Rumore*, 101 F.3d 20 (2d Cir. 1996). If this reasoning were correct, Khosrowshahi's notice of appeal, filed May 5, 2000, would have been untimely and, therefore, barred by Fed. R. App. P. 4(a).

Because the court ordered the two cases "consolidated for all purposes," we apply the rule announced in *Trinity Broadcasting Corp. v. Eller*, 827 F.2d 673 (10th Cir. 1987). There, we observed that the circuits were split regarding the finality of judgments in consolidated cases and we adopted the rule of the Ninth Circuit:

> The Ninth Circuit has adopted an absolute rule that a judgment in a consolidated action that does not dispose of all claims is not final without a Rule 54(b) certification. . . . We agree with the Ninth Circuit's approach, and adopt the rule that a judgment in a consolidated action that does not

dispose of all claims shall not operate as a final, appealable judgment under 28 U.S.C. § 1291. . . . Our adoption of any other rule would lead to the same piecemeal review Rule 54(b) seeks to prevent. We reject the flexible approach in considering the nature of the consolidation in each individual case because "it is essential that the point at which a judgment is final be crystal clear because appellate rights depend upon it."

*Trinity Broadcasting*, 827 F.2d at 675 (citations omitted).

This rule, contrary to Biocore's assertion, is consistent with *Farkas* because there a court clerk rather than the court itself vacated and reentered judgment–without making any changes of substance. *Farkas* makes plain that it applies "[w]here a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment . . . ." 101 F.3d at 22 (citing *FTC v. Minneapolis-Honeywell Regulator*, 344 U.S. 206 (1952)). In cases where the trial court changes matters of substance, or resolves an ambiguity, the period during which a notice of appeal begins to run is from the later date. *Id.* at 23.

We therefore conclude that under *Trinity Broadcasting*, Fed. R. App. P. 4(a)(1) does not render Khosrowshahi's appeal (No. 00-3180) untimely. Consequently, we have jurisdiction to hear the appeals from the district court's final judgment pursuant to 28 U.S.C. § 1291.

**B**

*Whether the district court erred when it granted Khosrowshahi*
*a new trial on both liability and damages*

Biocore asks us to reverse the district court's grant of a new trial on the

- 7 -

misappropriation issue and to reinstate the jury's award of $155,236. Specifically, Biocore alleges that, in granting Khosrowshahi a new trial on its misappropriation claim, the district court (1) improperly relied upon juror statements and (2) set aside a verdict that was supported by the evidence. If we should hold that the new trial was properly granted, Biocore argues in the alternative either the district court erred by not granting remittitur, or the district court should have held a new trial on the issue of damages only, rather than on both damages and liability. Khosrowshahi asks us to affirm the grant or, in the alternative, to hold that he was entitled to judgment as a matter of law on the misappropriation issue.

## 1

### *The district court's alleged reliance on juror statements*

The record documents some contact with several jurors that Biocore suggests improperly influenced the court. After the delivery of the verdict, a judicial clerk, in his role as bailiff for the court, discussed the basis for the jury's award with some of the jurors and this information was passed on to the judge. The judge was, apparently, also aware of some juror statements made to reporters from the *Kansas City Star*. What the court learned was that some jurors indicated that they had based their damage award on two factors: the salary paid to Khosrowshahi by his new employer Integra during the six month period when Integra was attempting to duplicate Biocore's product, and a percentage of the profit Khosrowshahi received from sales of Biocore's product to TAFA,

another distributor of medical products.  The jury had heard testimony regarding sales to TAFA of products Khosrowshahi had received as free samples from Biocore.  II Aple. Supp. App. 359 (testimony of Khosrowshahi).  This was offered to show that Khosrowshahi had a motive to misappropriate trade secrets.  *Biocore*, 96 F. Supp. 2d at 1236.  The court ruled, however, the TAFA sales could form no basis for an award to Biocore since this claim was deliberately not asserted, *Biocore*, 96 F. Supp. 2d at 1236,–Biocore dropped its claims that Khosrowshahi disclosed trade secrets to TAFA to avoid sanctions for destroying financial records.  I Aple. Supp. App. 110-11.

Biocore correctly points out that Fed. R. Evid. 606(b) prohibits the court from considering jurors' later comments in determining whether the verdict was supported by the evidence.  The court, aware of this rule, explained that it was "[b]y serendipity" that it came into possession of this information, and  that it made its decision on other grounds. II Aple. App. 518.  Specifically, the record does show that the court was aware of the impropriety of relying on these kinds of statements by jurors, and gives the court's reasoning, independent of juror comments, in granting a new trial:

> THE COURT: Well, that is not it.  Maybe I need to clarify that, because I agree with you that [the jurors' comments are] not information we can take into account.  But if you—even if you put that to one side—well, I guess especially if you put that to one side, it becomes all the more mystifying how they came up with the figure that they did.  And given—plaintiffs' proof on the issue of damages was basically an all or nothing thing.  It was either all of the costs of research and development since the beginning of BioCore or nothing.  And I don't see any way that the jury could have rationally sifted through all the research and development costs and come up with that particular figure based on any scenario that was plausibly

submitted . . . .

II Aple. App. 399-400.

Whether or not explicitly relied upon, the district court did accept the jurors' statements at face value, believing that "[b]y serendipity, the Court understands how the jury reached its decision . . . ." II Aple. App. 518. This, however, may not have been accurate. Among the numerous evils Rule 606 attempts to avoid, the Advisory Notes to the 1974 Enactment mentions "the possible exploitation of disgruntled or otherwise badly-motivated ex-jurors." Even assuming that jurors can accurately remember and state the basis for their verdict, there is no reason to suppose that every juror's casual after-the-fact explanation will be fully reliable. *See United States v. Gonzalez*, 227 F.3d 520, 525-27 (6th Cir. 2000) (discussing with evident skepticism a juror's statements to a trial court regarding jury deliberations).

"It is settled law that juror testimony is inadmissible to impeach a verdict, except where the proffered testimony relates to whether extraneous prejudicial information or any outside influence was improperly brought to bear upon any juror." *United States v. Miller*, 806 F.2d 223, 225 n.2 (10th Cir. 1986) (citations and quotations omitted). The Advisory Committee Notes to the 1972 Proposed Rules cite authority for the proposition that federal courts generally cannot consider jurors' statements regarding how they reached the verdict:

> Under the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends

- 10 -

to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process. Thus testimony or affidavits of jurors have been held incompetent to show a compromise verdict, *Hyde v. United States*, 225 U.S. 347, 382 (1912); a quotient verdict, *McDonald v. Pless*, 238 U.S. 264 (1915); speculation as to insurance coverage. *Holden v. Porter*, 405 F.2d 878 (10th Cir. 1969); *Farmers Coop. Elev. Ass'n v. Strand*, 382 F.2d 224, 230 (8th Cir. 1967), *cert. denied* 389 U.S. 1014; misinterpretation of instructions, *Farmers Coop. Elev. Ass'n v. Strand*, *supra*; mistake in returning verdict, *United States v. Chereton*, 309 F.2d 197 (6th Cir.1 962); interpretation of guilty plea by one defendant as implicating others, *United States v. Crosby*, 294 F.2d 928, 949 (2d Cir. 1961).

The notes add that "[t]he values sought to be promoted by excluding the evidence include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." (citing *McDonald v. Pless*, 238 U.S. 264 (1915)).

We are troubled by the circumstances revealed by this record, and noted above, concerning the information related to the judge by the judicial clerk.[3] Nevertheless, considering all the surrounding circumstances here, we accept the district court's

---

[3]See the Advisory Committee Notes:

> Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberations of the jurors.

Advisory Notes to the 1974 Enactment (citation omitted). *See, e.g.*, *Tanner v. United States,* 483 U.S. 107, 127 (1987) ("[L]ong recognized and very substantial concerns support the protection of jury deliberation from intrusive inquiry."); *United States v. Bagnariol,* 665 F.2d 877, 884 (9th Cir. 1981) (jurors "may not be questioned about the deliberative process. . . ").

explanation that it did not rely on the jurors' comments in reaching its decision.

**2**

*Whether the verdict for Biocore was adequately supported by the evidence*

The district court granted a new trial on the grounds that the jury's damage award of $155,236 to Biocore "could be viewed as either too high or too low," and that "[n]othing in the evidence . . . supported a verdict in the amount awarded here." II Aple. App. 518 (Order of July 7, 1999). Central to this ruling was the court characterization of Biocore's claim as "all or nothing." *Id*. at 399-400. This ruling by this district court will be reviewed for an abuse of discretion–"[w]here a new trial motion asserts that the jury award is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of evidence." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (citations omitted).

The question of whether the jury award in this case was clearly against the weight of the evidence must be considered under Kansas law. As the Supreme Court has explained, the law applied in evaluating the legality of the amount of a jury verdict is substantive rather than procedural. *Gasperini v. Center for the Humanities*, 518 U.S. 415, 425, 428-31 (1996) (holding that the standard for granting a new trial on the basis that a jury's award of damages is improper "influences outcomes by tightening the range of tolerable awards"). Therefore, under the principles laid out in *Erie R. Co. v. Tompkins,*

304 U.S. 64 (1938), a federal trial court sitting in diversity is required to apply state law

in determining whether a jury's award of damages is proper.[4] *Smith v. Ingersoll-Rand*

*Co.*, 214 F.3d 1235, 1251 (10th Cir. 2000) ("In a diversity action state law governs the

propriety of an award of damages.").  Where state law governs the propriety of an award

of damages, the trial court should determine whether the jury's verdict is within the

confines set by state law.  *Gasperini*, 518 U.S. at 437 (citing *Browning-Ferris Indus. of

Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)).  The court of appeals "should

then review the district court's determination under an abuse-of-discretion standard." *Id.*

(footnote omitted).

Kansas law governing the propriety of a jury award is described in *Mettee v.

Urban Renewal Agency*, 547 P.2d 356 (Kan. 1976).  There, the trial court rejected the

award as based on witnesses' valuations that it found were "either unreasonably high or

unreasonably low" and granted a new trial on the basis that the award was "grossly

excessive under the credible evidence" and "contrary to the evidence."  *Id.* at 359.  In

reversing the trial court, the Kansas Supreme Court explained that a new trial can be

---

[4]Both parties urge us, as they urged the district court below, to apply a purely federal standard.  *See* I Aple. App. 283-84 (Khosrowshahi's memorandum to the district court in support of a motion for a new trial); 308-09 (Biocore's memorandum).  We, however, are not bound by the parties' agreement regarding the standard of review.  *Koch v. United States*, 47 F.3d 1015, 1018 (10th Cir. 1995).  Neither party cites *Gasperini* or any similar case that would provide the correct standard of review.  In any case, as noted below, the incorrect application of a purely federal standard would not change the outcome of the case at bar.

granted by the trial court on grounds that a jury verdict is not supported by the evidence only if the trial court sets forth "specific reasons for its order." *Id*. These reasons cannot be merely "a substitution of the court's judgment for that of the jury." *Id.* at 360. As the *Mettee* court cautioned: "A trial court cannot weigh the evidence, make its own determination, and substitute its judgment for that of a jury . . . . A verdict within the evidence cannot be disturbed by the trial court even though the court would have arrived at a different conclusion." *Id.* In *Sanjuan v. IBP, Inc.*, 160 F.3d 1291 (10th Cir. 1998), decided after *Gasperini*, we applied Kansas law regarding the grant of a new trial. There, we reviewed a jury's award of damages, explaining that "[i]n reviewing a jury's award of damages, this Court should sustain the award unless it is clearly erroneous or there is no evidence to support the award." *Id.* at 1299 (citations and quotations omitted).

Applying a federal standard, we noted in *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983), "[i]t is well settled that a verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it." There, we also warned that "a trial judge may not have the same jury reconsider what appears to him (or what he might determine upon general inquiry) to be a miscalculation of general damages. Appearances do not always ring true . . . ." *Id.* (quoting *Chicago, Rock Island & Pacific R.R. v. Speth*, 404 F.2d 291, 295 (8th Cir. 1968)) (quotations and alteration omitted). Therefore, although we apply the state standard to this case, we feel that application of the federal standard would not yield a different result.

Here, the trial court justified its granting of a new trial with only brief reasoning echoing its "all or nothing" view of the case: "The jury verdict in this case could be viewed as either too high or too low; the Court expresses no opinion on that question. Nothing in the evidence, however, supported a verdict in the amount awarded here." II Aple. App. 519 (Order of July 7, 1999). At a hearing, the trial judge simply said: "I have told [the parties] since the beginning how I see this issue . . . . [W]hat we have is a situation where this is no cogent way of looking at the evidence with respect to the measure of damages that supports any award for $155,235." II Aple. App. 392. This reasoning is strikingly similar to the prohibited reasoning of the Kansas state court in *Mettee*. In both cases, an emphasis was placed on the trial judge's own view of what the evidence could credibly show, without explaining why no reasonable jury could hold a different view. This emphasis is misplaced because in evaluating whether a jury's award of damages is proper, under either Kansas or federal law, the focus is not on the trial judge, nor on whether the judge could see any "cogent way of looking at the evidence" that would support the jury's award. Rather, the question is whether the jury could do so. For the reasons detailed below, we believe it could.

Khosrowshahi strongly argues that there was no evidence on the basis of which the jury could have separated out portions of the $5 million claim. Brief of Appellee Khosrowshahi in No. 3170 at 7-8, 19-23. Though the district court characterized Biocore's $5 million claim as "all or nothing," sections of the district court's order and

- 15 -

relevant portions of the record could lead a rational fact finder to a different conclusion. While we agree that Biocore argued that it was entitled to the entire $5 million, we do not find in the record an adequate basis for concluding that this was a unitary sum and that the evidence could not support a lesser award.

The record contains evidence that the jury could have relied upon in granting an award of a lesser amount. Many of the expenditures underlying the $5 million figure were open to serious question. Manoj Jain said that he spent his own and his family's money on research and development in India from 1988 through 1996, but was unable to provide good records. I Aple. App. 92-94, 113-114; II Aple. Supp. App. 378, 413-15, 440. Khosrowshahi asserts that research and development costs were either poorly documented or not documented at all: "R&D costs, in India, or elsewhere, were paid in cash or otherwise, with no record, nothing, to establish they happened." Brief of Appellee Khosrowshahi in No. 3170 at 8. He cites extensive evidence which he argues calls into doubt most or all of Biocore's asserted $5 million expenditure on research and development. *Id.* at 7-8. We therefore conclude that the jury could have reasonably rejected Biocore's argument that it was damaged in the amount of $5 million.

The jury's rejection of the $5 million figure would not necessarily have led it to the conclusion that Biocore spent no money at all on the research and development of either trade secrets or proprietary information. *See* II Aple. Supp. App. 594-95 (testimony of Biocore's former controller Timothy Johnson regarding the unavoidable costs of research

- 16 -

and development).  Rather, the jury could have come to the more logical conclusion that Biocore possessed *some* confidential information that was worth a substantial amount of money, but less than $5 million.  A good deal of evidence regarding specific expenses, which the jury had the discretion to accept or reject, was presented.  *See, e.g.*, I Aple. App. 143-48 (testimony concerning research and development costs); II Aple. App. 522-37 (Biocore's financial statements for 1995-96 showing research and development as well as more specific expenses).  Therefore, though Biocore claimed the $5 million as a lump sum, there is no reason the jury would have been compelled to accept or reject this claim as a whole, rather than evaluating each piece of evidence or expense individually.

The jury also could have valued Biocore's trade secrets by taking note of the amount by which Khosrowshahi's salary increased when he went to Integra.  It was argued at trial that Khosrowshahi misappropriated Biocore's trade secrets and gave them to Integra, Biocore's competitor.  *Biocore*, 96 F. Supp. 2d at 1224.  If the jury believed that some portion of Khosrowshahi's salary increase represented the value Integra placed on acquiring Biocore's trade secrets, they could reasonably have used such a figure in fixing damages.

Further, we need not investigate every possible method the jury might conceivably have used to calculate the exact sum it awarded.  "[T]he amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it."  *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985) (citing *Hitchcock v. Weddle*, 304 F.2d

735, 737 (10th Cir. 1962)).  It is sufficient that the jury's award was within the range of possible awards.

Finally, we note that the district court's order granting a new trial is inconsistent with an "all or nothing" view of damages.  In concluding that both damages and liability issues would have to be retried, the district court reasoned that:

> [t]he extent to which defendant [Khosrowshahi] misappropriated plaintiffs' trade secrets—if he did so at all—was hotly disputed at trial.  The Court cannot determine the extent to which the jury found that misappropriation had occurred.  Without this information, a new jury could not render an informed verdict on the issue of damages.  For a new jury to consider only damages would therefore present a practical impossibility.

II Aple. App. 519-20 (order of July 7, 1999).  This holding demonstrates that the district court viewed the amount of damages as dependent on the extent of misappropriation rather than as an "all or nothing" proposition.

We agree with the district court's assessment that the issue of whether, and to what extent, Khosrowshahi misappropriated Biocore's trade secrets was "hotly disputed" at trial.  II Aple. App. 519.  We conclude that the jury's verdict was one to which a jury "acting fairly and intelligently, might (have) come." *Mettee*, 547 P.2d at 360.  We therefore hold that the district court abused its discretion in setting aside the jury's $155,236.00 award of damages to Biocore and in granting a new trial and we reverse that ruling.  Biocore's alternative arguments–that in the second trial it should have been offered remittitur or that the second trial should have been on damages alone–are

- 18 -

therefore moot.

**3**

*Khosrowshahi's motion for judgment as a matter of law on Biocore's claims*

In the alternative, Khosrowshahi contends that "[t]he only error by the trial court was in not granting defendant's motion for judgment as a matter of law." "We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court." *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (citation and quotations omitted). Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* (citation and quotations omitted). We do not find this standard was met here.

The district court denied Khosrowshahi's motion for judgment as a matter of law, holding both that there was sufficient evidence from which the jury could infer that Khosrowshahi misappropriated Biocore's trade secret information, and that Khosrowshahi was unjustly enriched by that misappropriation. II Aple. App. 390-92. In so holding, the district court applied Kansas state law, the appropriateness of which was acknowledged by Khosrowshahi, II Aple Ap. 266-68 (citing K.S.A. § 60-3322). *Biocore*, 96 F. Supp. 2d at 1224 (applying the Kansas Uniform Trade Secrets Act). In support of his argument to this court, however, Khosrowshahi neither argues for a

different interpretation of Kansas trade secret law, nor does he show how the evidence could not support recovery under Kansas law as applied by the district court. Opening Brief of Appellant Khosrowshahi in No 3180 at 14-16 (citing *Chromoglass Corp. v. Ferm*, 344 F. Supp. 924 (M.D. Pa. 1972); *E. W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108 (8th Cir. 1969)).

Instead, Khosrowshahi attempts to adopt by reference arguments made in his motion for judgment as a matter of law in the district court. Opening Brief of Khosrowshahi in No 3180 at 15 ("The standards for appellate review . . . justify this Court's entry of judgment for the reasons originally stated by Khosrowshahi in his motion and based on the analysis and authority set forth by Khosrowshahi in response to the new trial issues, *[i]nfra.*"). We reject this proffer of arguments as improper.[5]

As an additional argument for judgment as a matter of law in his favor, Khosrowshahi invites us to review the district court's full Memorandum and Order where the court found that Khosrowshahi had not misappropriated any trade secrets. *Id.* at 15 (citing Aple. App. 1154-85). This, however, is not persuasive, because the Memorandum and Order merely spells out what the judge found and provides no indication that a reasonable trier of fact could not find differently. *See Lytle v. Household Mfg., Inc.*, 494

---

[5]Adoption by reference of materials filed in the district court is impermissible under Fed. R. App. P. 28(a)(6). One reason for this rule is to prevent parties from circumventing page limits. *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998).

U.S. 545, 555 (1990) ("Nothing in the record indicates that the court reached the only reasonable conclusions or that a jury could not have found the facts differently and entered a different verdict. As we have long recognized, a jury and a judge can draw different conclusions from the same evidence."). Indeed, the district court recognized that reasonable fact finders could reach different conclusions on the misappropriation claim when it denied Khosrowshahi's motion for judgment as a matter of law.

Khosrowshahi, therefore, does not show that the district court erred in denying his motion for judgment as a matter of law on this issue.

## C

*Whether the district court's finding of no misappropriation of trade secrets*

*in the second trial was clearly erroneous*

Because we reverse the district court's grant of a new trial, Biocore's challenge to the verdict at the second trial is moot.

## D

*Injunctive relief*

Biocore applied for injunctive relief in the district court to restrain the use or disclosure of Biocore's trade secrets, *inter alia*. III Aple. App. 1099-1103. The district court denied Biocore's motion for injunctive relief at the close of the first trial because it had granted a new trial on the question of whether Khosrowshahi had appropriated any of Biocore's trade secrets. II Aple. App. 411 (minute sheet denying injunctive relief as

- 21 -

moot). Nor did the district court address the propriety of injunctive relief at the close of the second trial because there it found that Khosrowshahi had not appropriated any of Biocore's trade secrets. For the reasons detailed above, we reverse the grant of a new trial and direct that the district court reinstate the jury's verdict in favor of Biocore for $155,236.00. Consequently, the propriety of injunctive relief is no longer moot and should be considered by the district court on remand.

**E**

*Whether admission of conspiracy and TAFA sales evidence was improper and warrants a new trial on Khosrowshahi's claims*

Khosrowshahi argues that the district court should have granted him a new trial due to error in the admission of certain evidence regarding product sales to TAFA and an alleged conspiracy between him and a competitor of Biocore, Richard Walsh ("Walsh"). Opening Brief of Appellee Khosrowshahi in No 3170 at 12-13, 27-29. The evidentiary rulings of a trial court are reviewed for an abuse of discretion. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1433 (10th Cir. 1993). We likewise review the district court's decision to deny a motion for a new trial for an abuse of discretion. *Anaeme*, 164 F.3d at 1284.

The conspiracy evidence, as Khosrowshahi characterizes it, consisted of testimony regarding meetings between Khosrowshahi and Walsh where they allegedly made plans to harm Biocore for their own financial advantage. I Aple. Supp. App. 226-28. The TAFA sales evidence indicated that Khosrowshahi sold to TAFA, for a substantial price, some

Biocore products that he received as free samples. According to Khosrowshahi, both the TAFA sales and conspiracy evidence were offered to show that Khosrowshahi was actively seeking to harm Biocore and that he had knowledge of how to produce Biocore's product. Opening Brief of Appellee Khosrowshahi in No 3170 at 27. Neither the conspiracy nor the TAFA sales, however, constituted independent theories of liability. I Aple. Supp. App. 110-11 (stipulating dismissal of conspiracy claims); *Id.* at 114 (TAFA sales claims).

In support of his argument that the district court should have granted him a new trial, Khosrowshahi cites over 100 pages of the record that purportedly show conspiracy and sales evidence being admitted over his objections. Opening Brief of Appellee Khosrowshahi in No 3170 at 13-14 and nn.5-6 (citing I Aple. Supp. App. 110-21, 223-47, 248-53, 274-76, 282-83; II Aple. Supp. App. 305, 335-36, 348-49, 354-59, 380, 427-32, 435; III Aplt. App. 824-884).[6] Khosrowshahi does not identify any specific ruling of the trial court that he is challenging nor does he articulate any specific grounds for reversal. Instead, Khosrowshahi makes three general statements: 1) "The introduction of [the sales evidence and the conspiracy evidence] with respect to Khosrowshahi's claims can't be considered harmless;" 3) "Admission of hearsay testimony, such as repeatedly came in [sic] on the conspiracy issue . . . constitutes reversible error;" and 3) "The refusal to give

---

[6] Khosrowshahi also cites a number of pages of an unidentified "Walsh Transcript" or "Walsh Trial Transcript" rather than the appendix. *Id.* at 13-14 and nn.5-6.

a curative instruction was not harmless." Opening Brief of Appellee Khosrowshahi in No 3170 at 27-28.

Fed. R. App. P. 28(a)(9)(A) provides that the argument section of an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Consequently, this court will consider issues only to the extent that they are raised with adequate specificity in Khosrowshahi's brief. We will not sift through voluminous portions of transcript in search of all evidentiary rulings made by the district court, nor will we construct arguments regarding those rulings for Khosrowshahi. *Thomas*, 965 F.2d at 827. And, as stated above, we will not allow Khosrowshahi to incorporate by reference all the arguments he made to the district court on these issues. *Gaines-Tabb*, 160 F.3d at 623-24.

We therefore construe this section of Khosrowshahi's brief as adequately appealing the district court's denial of a new trial on the basis that the court admitted irrelevant evidence in violation of Fed. R. Evid. 402, hearsay in violation of Fed. R. Evid. 802, and failed to give the limiting instruction required by Rule 105.

**1**

*Relevance*

Khosrowshahi asserts that, "evidence of Khosrowshahi's sales to TAFA of Biocore product provided by Richard Walsh and testimony and suggestions in the record

by Ramon Carter, that Khosrowshahi was supposedly out to get Biocore and could produce the product, etc. were erroneously allowed into evidence." Brief of Appellee Khosrowshahi in No. 3170 at 27. In support, Khosrowshahi refers to an earlier footnote in his brief that contained citations to over 100 pages of the record. *Id.* One of the portions of the record cited by this footnote was a transcript of an argument before the district court regarding the admissibility of Carter's testimony specifically and the conspiracy evidence and sales evidence generally. I Aple Supp. App. 224-246. As such, this appears to be another attempt to adopt by reference arguments made in district court. For the reasons noted above, we reject this proffer of arguments as improper. *See supra* text accompanying note 5.

**2**

*Hearsay*

Khosrowshahi cites portions of the trial transcripts and asserts: "Admission of hearsay testimony, such as repeatedly came in [sic] on the conspiracy issue with the testimony of Ramon Carter ... constitutes reversible error." Brief of Appellee Khosrowshahi in No. 3170 at 12-13, 27-29. The cited portions of the trial transcript, however, contain neither hearsay objections nor rulings on hearsay objections–the portions of the record cited by Khosrowshahi show the district court expressly declined to make a hearsay ruling. I Aple. Supp. App. 245 (In response to hearsay objections regarding the conspiracy evidence, the district court responded, "He [Carter] may not be

there [on the stand] very long, but we'll just see what he has to say."). Khosrowshahi also cites his various objections to many of Biocore's proposed trial exhibits, some of which were hearsay based. I Aple. Supp. App. 112-13, 115-17, 120.

A purported erroneous admission of evidence by the district court will not be reviewed on appeal unless the party alleging error cites the portion of the record containing that party's objection to the evidence and the district court's ruling on that objection. *Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993). *See* 10th Cir. R. 28.2(b) & (c). Here, Khosrowshahi does not show where the court ruled on his hearsay objections, nor does he indicate exactly what testimony was admitted into evidence. Khosrowshahi also does not show where the court ruled on his objections to the exhibits, or which of the challenged exhibits were admitted into evidence. We therefore decline to review these alleged errors.[7]

**3**

*Limiting Instruction*

Khosrowshahi asserts that the court refused to give a "curative instruction" or

___

[7]As a side note, even though we decline to review these alleged errors, we believe it unlikely that the district court committed reversible error in respect to the admission of potential hearsay evidence. As the portions of the record cited by Khosrowshahi indicate, the district court was keenly aware of the danger of inadmissible hearsay and was ready to step in to prevent its introduction. I Aple. Supp. App. 252-53 (The district court told Biocore's counsel before the testimony of Carter that, "You can either tell him [Carter] before you put [him] up on the stand that he can't talk about hearsay, or Ill tell him."); *id.* at 337 (The district court told Biocore's counsel when discussing the conspiracy evidence that, "I don't think you can just paint a really broad brush here and say that all of Walsh's statements are statements against penal interest.").

"cautionary instruction":[8] "[T]he court allowed in [the alleged conspiracy] evidence and then refused to give a cautionary instruction to the jury with respect to the claimed 'conspiracy.'" Brief of Appellee Khosrowshahi in No. 3170 at 13. Khosrowshahi goes on to say that:

> [a] later request for a curative instruction explaining the role of the [conspiracy] evidence was denied.
> . . .
> The refusal to give a curative instruction was not harmless error under the circumstances; had the court given a proper instruction on the role of the TAFA sales and conspiracy evidence, the jury might have returned a different verdict.

*Id.* at 28 (citing I Aple. Supp. App. 282-83). In challenging the district court's limiting instruction, however, Khosrowshahi seems to be complaining about rulings that were favorable to him, but apparently not as favorable as he hoped. Khosrowshahi's own citations to the record demonstrate that, contrary to his assertions, the court *did* respond to Khosrowshahi's counsel's only objections as to the conspiracy evidence's limited relevance by giving a limiting instruction.

As was explained above, the district court admitted the conspiracy evidence not as a separate theory of liability but instead to show that Khosrowshahi was actively seeking to harm Biocore and that he had knowledge of how to produce Biocore's product. Brief of Appellee Khosrowshahi in No. 3170 at 27. The record discloses that the district court made

---

[8]He is apparently referring to the limiting instruction provided for under Fed. R. Evid. 105.

this distinction clear to the jury. Responding to the objection of Khosrowshahi's counsel, the court said:

> Members of the jury, nobody here is claiming that they are entitled to recover damages because of a conspiracy. . . .
> . . .
> You [the jury] wont be asked to render any verdict on any specific conspiracy theory that involves damages.

I Aple. Supp. App. 430. This distinction was also reflected in the jury instructions regarding Biocore's claims against Khosrowshahi which did not contain any reference to a conspiracy. I Aple. App. 167. We, therefore, conclude that the district court did not abuse its discretion in failing to instruct the jury as Khosrowshahi requested.

In addition, "[n]o party may assign as error the giving or the failing to give an instruction unless the party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection*." Fed. R. Civ. P. 51 (emphasis added). Further, 10th Cir. R. 28.2(c) requires a party to include in their initial briefs "a statement as to where a proper objection and the court's ruling thereon may be found in the record" where that party is appealing based upon "the giving or refusal to give a particular jury instruction." "Because the purpose of the objection is to give the [district] court an opportunity to correct any mistake before the jury enters deliberations, an excessively vague or general objection to the propriety of a given instruction is insufficient to preserve the issue for appeal." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999) (quotations and citation omitted).

- 28 -

Here, Khosrowshahi only proffered his own instruction. This does not constitute an implied objection to the instruction given by the district court. *United States v. Voss*, 82 F.3d 1521, 1530 (10th Cir. 1996). Indeed, Khosrowshahi's own citation to the record demonstrates that he did not object distinctly, neither explaining why the district court's instruction was insufficient nor stating grounds for his proposed instruction. Therefore, even if we considered the district court's jury instruction as insufficient, and we do not, Khosrowshahi has presented no grounds for reversal on this issue.

**F**

*Whether the verdict denying Khosrowshahi's stock and
deferred compensation claims was supported by the evidence*

Khosrowshahi asks that we reverse the district court's denial of his motion for a new trial on his stock and deferred compensation claims. Brief of Appellee Khosrowshahi in No. 3170 at 12. He argues that he was entitled to a new trial because the jury's verdict was "against the weight of the evidence and insufficient as a matter of law," because his claims were closely intertwined with Biocore's misappropriation claims on which a new trial was granted, and because he was unfairly prejudiced by the improper admission of the conspiracy and TAFA sales evidence. *Id.*

As noted above, we have found no error in connection with the admission of the conspiracy and TAFA sales evidence. We also reversed the district court's grant of a new trial on the misappropriation claim. Therefore, the sole remaining question is whether the jury's verdict for Biocore on the issue of Khosrowshahi's stock and deferred

- 29 -

compensation claims was supported by the evidence. The appropriate standard of review is detailed in *Anaeme*:

> We review the district court's decision to deny a motion for a new trial only for an abuse of discretion. Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence. With respect to our review of the jury's verdict, we consider the record evidence in the light most favorable to the prevailing party.

164 F.3d at 1284 (citations and quotations omitted).

As an initial matter, Biocore argues that "this court lacks jurisdiction to entertain Khosrowshahi's belated attempt to appeal the verdict against him . . . ." Reply Brief of Appellants Biocore and Biocore Medical in No. 00-3170 at 8. Biocore's position is that Khosrowshahi failed to preserve this matter for review because he did not make this argument to the district court: "Khosrowshahi certainly never argued to the district court that the jury's verdict against him on his claims 'was against the weight of the evidence and insufficient as a matter of law' . . . ." *Id.* Khosrowshahi, by contrast, contends that he "moved for [a] new trial on all [his] claims . . . ." Brief of Appellee Khosrowshahi in No. 3170 at 26. In support, Khosrowshahi cites only a portion of the record where the district court said there was no reason to order a new trial on Khosrowshahi's claims. *Id.* (citing II Aple. App. 392-93). This, however, shows only that Khosrowshahi moved for a new trial on his claims, and not that he moved for a judgment as a matter of law.

An analysis of the record does not provide a ready answer to the question of whether Khosrowshahi made an argument for a new trial on his claims to the district

court that he now makes to this court. The appendix includes Khosrowshahi's Memorandum in Support of Alternative Motion for New Trial. I Aple. App. 283-94. Although the caption includes the case number representing Khosrowshahi's claims, it is not clear in the body of the memorandum that Khosrowshahi presented arguments for a new trial on his claims as well as Biocore's, rather than on Biocore's claims alone. Khosrowshahi makes only general arguments that improper admission of the conspiracy and TAFA sales evidence was "highly prejudicial," *id.* at 286, and as a result, "the jury surely was confused and/or believed that they could consider such evidence for any relevant determinations . . . . ," *id.* at 292. We need not decide, however, whether Khosrowshahi made these arguments to the district court since we find them unpersuasive.

Even though we decline to decide whether Khosrowshahi's argument was made to the district court, we still have jurisdiction to consider the merits of this argument. "*As a general rule* we refuse to consider arguments raised for the first time on appeal . . . ." *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) (emphasis added and quotations omitted). The "general waiver rule is not absolute . . . and we may depart from it in our discretion." *Sussman v. Patterson*, 108 F.3d 1206, 1210 (10th Cir. 1997) (quotations omitted). Likewise in *Valley Improvement Ass'n v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1119 (10th Cir. 1997), we observed that, where the appellant "failed to show that this issue was raised below, . . . we need not consider it." We

nevertheless went on to state there that "we are not persuaded that the judgment below should be reversed" on the basis of the appellant's arguments." *Id.* We do the same here.

In this case, Khosrowshahi claimed that Manoj Jain had promised him 10% stock ownership in both Biocore, Inc. and Biocore Medical Technologies, Inc.; a starting salary of $120,000; and an increased salary of $150,000 beginning in 1995. Brief of Appellee Khosrowshahi in No. 3170 at 9-10 (citing the record). At trial, Manoj Jain denied that he had made any such agreements or that he owed Khosrowshahi any money. II Aple. Supp. App. 421-22, 424-26, 467-68. This testimony was contradicted by several witnesses who testified that Jain had admitted that Khosrowshahi owned an interest in Biocore and was entitled to some additional money. III Aple. Supp. App. 582-83, 659-62, 665-66, 706, 710, 715-16. The jury returned a verdict for Biocore on this issue.

As plaintiff, Khosrowshahi bore the burden of persuasion on his claims. I Aple. Supp. App. 165-66, 176-78 (jury instructions). First, we note that the jury was not required to believe any of Khosrowshahi's evidence and could, at its discretion, reject any claim it found had not been proven by a preponderance of the evidence. *Id.* at 153, 158, 164 (jury instructions). In addition, the record shows that the only evidence presented of the alleged stock and deferred compensation obligations was oral. *See* II Aple. Supp. App. 320 (Khosrowshahi's testimony that there was no written documentation that his salary was to exceed $50,000); *Id.* at 323 (Khosrowshahi's testimony that all promises of stock were oral); *Id.* at 469.(Jain's testimony that the market value of this amount of stock

in 1996 was $23 million).  The lack of a written record could have formed a basis from which reasonable jurors might have concluded that no stock or deferred compensation agreement existed.

We therefore hold that the verdict was not "clearly, decidedly, or overwhelmingly against the weight of the evidence," and, accordingly, that the district court did not abuse its discretion in denying Khosrowshahi's motion for a new trial on the issue of his stock and deferred compensation claims.  *Anaeme*, 164 F.3d at 1284.

**IV**

For the reasons stated above, we REVERSE the district court's grant of a new trial and REMAND to the district court with instructions to enter judgment for Biocore in the amount originally awarded by the jury, $155,236.00.  We also REMAND the issue of injunctive relief so that the district court can consider the propriety of this request.  In all other respects the judgment of the district court is AFFIRMED.

Entered for the Court
William J. Holloway, Jr.
Circuit Judge